Carl HOLT, George Overton, and Gazelle Holt, Appellants,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee, at Nashville.

July 31, 1979.

Permission to Appeal Denied by Supreme Court Nov. 5, 1979.

Robert E. Burch, Dickson, for appellants Carl Holt and George Overton.

Robert L. Littleton, Jerry V. Smith, Dickson, for appellant Gazelle Holt.

William M. Leech, Jr., Atty. Gen., William O. Kelly, Asst. Atty. Gen., Nashville, Douglas Bates, III, Asst. Dist. Atty., Centerville, for appellee.

OPINION

TATUM, Judge.

Carl Holt, George Overton and Gazelle Holt appeal convictions of armed robbery for which each was sentenced to a term of ten years in the state penitentiary. In addition, Carl Holt appeals from a conviction of malicious shooting, for which he was sentenced to a term of not less than two years nor more than four years in the state penitentiary. In separate briefs, the appellants have made numerous assignments of error, all of which must be overruled.

Before discussing the assignments of error, we will first summarize the evidence. On the evening of 5 March 1978, shortly after 7:00 o'clock P.M., the victim, Tommy Turman, heard knocks on his front door; when he answered the door, he was confronted with two black males, both armed with pistols. The taller of the two pushed him away from the door and hit him on the head with the pistol. They pushed him into his bathroom, where a safe was located, and commanded him to open the safe. When the victim refused to do so, the taller of the intruders shot him in the right leg. The victim then opened the safe; subsequently, the intruders pushed the victim into his bedroom and required him to lie face down on the bed. They tied his hands and feet with electrical cords from an electric fan and a desk lamp. Approximately $47,-000.00, two rings, savings bonds and a watch were taken from the safe.

The intruders then fled in an automobile, but the victim succeeded in freeing himself before the automobile was out of sight. He observed that it had vertical taillights, two to three inches in width and eight inches long; these lights were similar to those of an automobile later established to belong to Gazelle Holt. Immediately after observing the fleeing automobile, the victim telephoned Allen's Store which was located diagonally across the street from the victim's home.

The victim was able to view the intruders since lights were burning in at least the living room and bathroom of the house.

Two days later, when the victim observed the appellants Carl Holt and George Overton in a police lineup, he positively identified both men as the intruders, indicating the taller one was Carl Holt, and the shorter one was George Overton. The victim also made an in-court identification of Carl Holt and George Overton.

Immediately after the robbery, while searching the victim's home, a police officer found a knife which had electrical burns on the blade. The appellant, Carl Holt, admitted ownership of this knife. Police observed bloody footprints in the house and on the porch; these footprints were made by shoes with the same sole design as shoes worn by Holt to the police station two days after the robbery.

At two minutes before seven o'clock P.M., on the date of the robbery, a car dealer passed an automobile admittedly owned and driven by Gazelle Holt; Holt's car was then approximately two miles from the victim's residence and traveling in that direction. Gazelle Holt's automobile was very distinctive: it was a 1973 black and white Monte Carlo with a Cadillac grill; it had a white stripe across the trunk, a "Playboy Bunny" in the center of the trunk, and a fireman's license plate attached to the rear.

At very near 7:00 o'clock P.M., Mr. Ernest Allen observed Gazelle Holt's automobile turn in front of Allen's store onto the small street or alley where victim resided a short distance away from the store. The car turned into the victim's driveway and stopped. Two men got out of the car and when they were near the victim's front door, the automobile lights went out. About five minutes later, as the two men left victim's house, but before they reached the automobile, the automobile lights came back on. Another witness also observed this automobile parked in the victim's driveway during this time. Later that night, when these witnesses saw Gazelle Holt's automobile at the jail, they identified his car as the one they had seen in the victim's driveway.

All three appellants gave exculpatory statements to police officers and testified in their own behalf. The appellants each had an alibi. Each statement contained details that were inconsistent with trial testimony, e. g., Gazelle Holt first denied that he had seen his co-defendants on the date of the robbery, but after learning that they admitted having seen him at about 3:00 o'clock P.M. on that date, he changed his statement to make it conform to their statements. There were other slight inconsistencies which we do not deem it necessary to mention here.

Gazelle Holt testified that when he passed by the car dealer immediately before and near the scene of the robbery, he was going to visit his girlfriend who lived at Wrigley. The girlfriend's residence was 6.3 miles from the victim's residence. One witness testified that Gazelle Holt arrived at his girlfriend's house between five minutes before seven and fifteen minutes after seven. The girlfriend testified that he arrived at 7:15. Gazelle Holt denied lending his automobile to anyone on the date of the robbery and testified that he had possession of it at the time of the robbery. He denied that the automobile in the victim's driveway was his.

George Overton and Carl Holt each admitted being with Gazelle Holt for a short time during the afternoon of the robbery, but stated that they left him shortly after 3:00 o'clock P.M. Overton and Carl Holt testified that they went to Nashville in Overton's car, arriving there at about 6:30 P.M. or shortly thereafter. Overton testified that after stopping by his aunt's home, he and others went to a show; Overton stated he returned to Dickson at approximately 12:15 A.M., on March 6. According to their evidence, Carl Holt did not accompany Overton to the show, but remained in Nashville all night, returning to his home in Dickson the next day. The appellants introduced other witnesses in support of their alibi defenses, and Gazelle Holt introduced two character witnesses.

Each of the appellants, through various assignments of error, attacks the weight and sufficiency of the evidence. We do not find that the evidence preponderates

against any of the verdicts and we find substantial and material evidence to support all of them. The victim, at a pre-trial lineup and in court positively identified Carl Holt and George Overton as being the two individuals who entered his home and robbed him at gunpoint.

The victim, a Hickman County resident, had participated in a basketball tournament with the appellants, all residents of Dickson, but he did not remember seeing them before this incident, and they were not familiar to him.

He identified Carl Holt as the individual who shot him in the leg and hit him in the head with a pistol. In addition, Carl Holt's knife bearing evidence that it had been used to cut electrical cords was found in the victim's house after the robbery and there was substantial evidence that shoes owned by Carl Holt made the bloody footprints found after the robbery.

Immediately before the robbery, Gazelle Holt admittedly was in Dickson County driving his distinctive automobile in the direction of the victim's house and very close to it. He had been in the company of Carl Holt and George Overton earlier in the day. The evidence is overwhelming that the two individuals who entered the victim's house and committed the robbery arrived there in Gazelle Holt's automobile. The automobile lights were turned off after Carl Holt and George Overton left the car, but were turned on before the two robbers reentered, thus leaving the inescapable conclusion that a third person had remained in the automobile while Carl Holt and George Overton were in the victim's home. Gazelle Holt admitted being in possession of his automobile during the time that the robbery occurred and, as stated, he admitted being in the vicinity. The alibi evidence of Gazelle Holt is, at most, marginal. His alibi witnesses testified that he reached his girlfriend's house, only 6.3 miles from the victim's house, as late as 7:15 P.M. while there was evidence that the crime occurred only minutes after 7:00 o'clock P.M.

We find substantial evidence upon which the jury could be convinced beyond a reasonable doubt of the appellants' guilt as to all of the charges against them. The issue of alibi and all other issues presented by the evidence were for the jury. The guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State. A reviewing court cannot reverse the verdict of a jury, approved by the trial judge, when the evidence does not preponderate against the jury verdict and when there is sufficient evidence to justify a rational trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, —— U.S. ——, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Cabbage*, 571 S.W.2d 832 (Tenn.1978). We do not make either of these findings in favor of any appellant and must therefore overrule the various assignments relating to the weight and sufficiency of the evidence.

Carl Holt and George Overton say that the court erred in admitting evidence of the victim's identification of them at a pre-indictment lineup. They also say that the suggestiveness of the lineup tainted the in-court identification and rendered it inadmissible.

The rule is that constitutional due process is violated if a pre-trial identification is influenced by suggestiveness by police officers to such degree as to render the identification unreliable. If a witness's in-court identification, is tainted by an unconstitutional pre-trial identification, then the in-court identification is not admissible in evidence. In determining whether the in-court identification is tainted by an unconstitutional pre-trial identification so as to render the in-court identification inadmissible, the following factors must be considered:

"[T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Bennett v. State*, 530 S.W.2d 511, 514 (Tenn.1975).

These factors are considered only after a determination is made that the pre-trial identification is unconstitutionally suggestive; they are considered to ascertain whether the in-court identification is influenced and tainted by the suggestiveness of the pre-trial identification. This has been referred to as the "Totality of Circumstances" rule. See *Forbes v. State*, 559 S.W.2d 318 (Tenn.1977); *Bennett v. State, supra*; and the cases cited therein.

Before we consider the totality of the circumstances, we must first find as a matter of law that there was "a very substantial likelihood of irreparable misidentification" created by undue suggestiveness by the police officers who conducted the lineup. *Forbes v. State, supra.* The police officers set up an eight-man lineup and then had the victim view the lineup through the glass on a door. The victim happened to know one person in the lineup—a deputy sheriff. The deputy sheriff was standing in the center with Carl Holt and George Overton standing on each side of him; Gazelle Holt was standing at one end of the lineup. After the victim had studied the lineup for about five minutes, he identified Carl Holt and George Overton as the two intruders by pointing them out on a photograph of the lineup. Officers did not indicate to the victim in any manner who they suspected.

The appellants insist that placing the appellants on each side of the deputy sheriff in the center of the lineup would attract the victim's attention. However, we do not find this fact of such consequence as to influence the victim's identification of Carl Holt and George Overton at the pre-trial lineup.[1] There is no evidence that the victim was unduly influenced; the line-up was fair and lawful in all respects. At trial, the victim could not describe some of the physical characteristics of Carl Holt and George Overton; this circumstance did not render the identification evidence inadmissible, but went to its weight. See *United States v. Dobson*, 512 F.2d 615 (6th Cir.

1975); *Hopson v. State*, 201 Tenn. 337, 299 S.W.2d 11 (1957); *Young v. State*, 566 S.W.2d 895 (Tenn.Cr.App.1978).

Since the lineup identification occurred during the investigative phase, prior to arrest of Carl Holt or George Overton, the Sixth Amendment right to counsel is not applicable. *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). We hold that the identification procedure utilized did not deny the appellants any right under the due process clause of the Fourteenth Amendment to the Constitution of the United States or under the analogous "Law of the Land" provision of Article I, Section 8, Constitution of Tennessee.

The appellants complain that the trial judge erred in refusing to dismiss the indictment for want of a prosecutor. The charging instruments in these cases were signed by all of the members of the Grand Jury and in every respect, met the requirements for presentments. A presentment need not bear the name of a prosecutor. T.C.A. § 40–1705(1).

The appellants insist that the presentments should have been dismissed on a pre-trial motion because the prosecution was instigated by the District Attorney General who subpoenaed witnesses to a Special Session of the Grand Jury; the Grand Jury knew nothing of the case until it was in session. Therefore, the appellants insist that the prosecutions could not be instituted by presentment, but must be instituted by indictment. These same arguments were considered and rejected by our Supreme Court in *Stanley v. State*, 171 Tenn. 406, 104 S.W.2d 819 (1937). That case stands for the proposition that a Grand Jury can make an accusation by presentment instead of an indictment, though the presentment was not grounded upon knowledge of the Grand Jury or a member or in the exercise of the inquisitorial power of

1. Gazelle Holt's attorney was present at the lineup. He testified that he found the lineup to be fair for his client.

the Grand Jury, but was instituted by the District Attorney General who procured the witnesses. Also see *Stoots v. State*, 205 Tenn. 59, 325 S.W.2d 532 (1959); *State v. Davidson*, 171 Tenn. 347, 103 S.W.2d 22 (1937). These assignments are overruled.

■ The appellants complain of the trial judge's refusing to grant a special request of a charge taken from *United States v. Telfaire,* 152 U.S.App.D.C. 146, 469 F.2d 552 (D.C.Cir.1972). The request is lengthy, but the main gist of it is to inform the jury that the State has the burden of proving identity beyond a reasonable doubt; it also instructs the jury how to consider identification evidence. The trial judge gave a fair and thorough charge relating to identification. In one instance, he told the jury that it is "incumbent upon the State of Tennessee, before you can convict the defendants of any one of the crimes charged or embraced in these indictments to establish to your satisfaction, beyond a reasonable doubt,— that the defendants now on trial are in fact the persons that committed said offenses." The trial judge also charged Tennessee Pattern Instructions—Criminal 37.17 as follows: "The State must prove beyond a reasonable doubt each defendant's identity as the person who committed the crime. If after considering all of the evidence in this case, you the jury are not satisfied beyond a reasonable doubt that the defendants are these persons, you must find them not guilty."

Tennessee does not require the "Telfaire charge." *Craig v. State*, 524 S.W.2d 504 (Tenn.Cr.App.1974). The trial judge having given the jury, in substance, the same instructions as is contained in the special request, though in different language, it was not error to deny the special request. *Bostick v. State*, 210 Tenn. 620, 360 S.W.2d 472 (1962); *Gunn v. State*, 487 S.W.2d 666 (Tenn.Cr.App.1972).

■ Carl Holt and George Overton assign error that the trial court erred in refusing their special request for a jury charge to the effect that the failure of a defendant to flee is a factor to be considered in the defendant's favor. The ap-

pellants rely upon *Braswell v. State*, 2 Tenn. Cases (Shannon) 595 (1877). This reliance is misplaced. In the *Braswell* case, the trial judge charged the jury that if the prisoners flee or resist arrest, this will be a circumstance against them, but if they do not flee or resist arrest, this would be a circumstance in their favor. In *Braswell*, there was evidence that the defendants resisted arrest and the reviewing court overruled an assignment of error aimed at the portion of the trial judge's charge that flight or resisting arrest would be "a circumstance against them." The portion of the charge given by the trial judge to the effect that the failure to flee or resist arrest could be considered in a prisoner's favor was not applicable to that case and was not approved by the Supreme Court; in the *Braswell case*, this portion of the charge was given gratuitiously by the trial judge.

Other than the *Braswell* case, the appellants have cited no authority in support of their contention and we have found none. The authorities hold unanimously to the contrary. See *United States v. Telfaire, supra; United States v. Scott*, 446 F.2d 509 (9th Cir. 1971); *State v. Bernal*, 13 Ariz. App. 177, 475 P.2d 6 (1970); *Schwartz v. State*, 379 N.E.2d 480 (Ind.App.1978); *State v. Cunha*, 193 N.W.2d 106 (Iowa 1971); *State v. Anderson*, 207 Or. 675, 298 P.2d 195 (1956). These assignments are overruled.

■ The appellants complain that the trial judge erred in holding court until 10:05 P.M. on the second day of the trial. At 6:45 P.M., the attorneys for the appellants informed the court that they were fatigued and requested an adjournment. The trial judge, at that time, recessed until 8:00 o'clock P.M., and then continued to hear evidence until 10:05 P.M. This occurred on Friday and the trial judge was anxious to complete the case before Sunday, since the jury was sequestered.

The appellants rely upon *Hembree v. State*, 546 S.W.2d 235 (Tenn.Cr.App.1976) in which we held that the trial judge was in error for hearing evidence from 9:00 o'clock one morning until 1:00 o'clock the next

morning. Counsel had told the court at Midnight that his mind was not functioning and he could not effectively represent his clients. We held that the holding of court until 1:00 o'clock A.M. was unreasonable under those circumstances.

However, in the case *sub judice*, the trial judge declared a recess from 6:45 until 8:00 o'clock P.M. and then continued to hold court for only an additional two hours and five minutes after recess. We do not think that this was oppressive or unreasonable; we do not find fault in the trial judge's desire to prevent keeping the jury locked up during the following Sunday. This assignment is overruled.

■■■■■ The appellant, George Overton, assigned error that the trial court erred by refusing to declare a mistrial when the sheriff testified that this appellant refused to sign a statement. After Overton had been advised of his rights in accordance with *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and had signed a waiver of these rights, Overton gave a full and complete exculpatory statement to the sheriff. The sheriff testified that after giving the statement, Overton refused to sign it; that testimony is the basis for this assignment of error. Obviously, it is erroneous for the State to show that the defendant claimed his privilege to remain silent when the privilege is exercised. However, the record in this case shows that Overton did not elect to remain silent, but made a full disclosure of his version of the facts to the sheriff. It was not improper for the sheriff to testify that Overton would not sign a written statement. See *Ware v. State*, 565 S.W.2d 906 (Tenn.Cr. App.1978). Moreover, we are convinced beyond a reasonable doubt that this evidence was not prejudicial to Overton. The assignment is overruled.

■■■■■ The appellant, Gazelle Holt, assigns error of the trial court "in failing to grant a mistrial as to Gazelle Holt after the proceedings were delayed three hours by the failure of the defendant Carl Holt to appear." Gazelle Holt also avers that he should have been granted a severance be-

cause of this delay of the beginning of the trial.

The jury was selected on 15 June 1978 and the trial of the three appellants was to begin at 9:00 o'clock A.M. on 16 June 1978. On the morning of 16 June 1978, Carl Holt, who had gone to Nashville for one of his witnesses, had car trouble, which delayed him in getting to court. The trial judge delayed the proceedings until 10:35 A.M. when he orally pronounced a mistrial as to Carl Holt, but no minute entry was made in accordance with the oral pronouncement. Shortly thereafter, before the commencement of the trial of Gazelle Holt and George Overton, Carl Holt appeared in court. At the request of Carl Holt and George Overton, the oral order declaring a mistrial as to Carl Holt was vacated; the trial judge explained to the jury the reason for Carl Holt's tardiness and proceeded with the trial of all three defendants.

We find that the procedure outlined above had no effect whatsoever on Gazelle Holt and we are convinced beyond doubt that it resulted in no prejudice to him. We therefore overrule these assignments.

■■■ Finally, Gazelle Holt insists that the trial judge committed error by failing to instruct the jury with regard to the good character evidence introduced on his behalf. This question is raised for the first time on this appeal as no exception or special request was made at trial and the alleged error was not mentioned in Gazelle Holt's motion for a new trial. We therefore cannot consider this assignment. *Taylor v. State*, 544 S.W.2d 897 (Tenn.Cr.App.1976); *Freeman v. State*, 542 S.W.2d 629 (Tenn.Cr. App.1976); *Brown v. State*, 537 S.W.2d 719 (Tenn.Cr.App.1975).

All assignments of error are overruled and the judgments of the Criminal Court are affirmed.

DUNCAN and DAUGHTREY, JJ., concur.