IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
July 2000 Session

## STATE OF TENNESSEE v. CALVIN OTIS TANKSLEY

**Direct Appeal from the Criminal Court for Davidson County**
**No. 96-C-1239, Seth Norman, Judge**

---

**No. M1998-00683-CCA-R3-CD - filed October 4, 2000**

---

The appellant, Calvin Otis Tanksley, was convicted by a Davidson County Jury of one count of rape of a child and one count of attempted rape of a child. Based on his classification as a repeat violent offender, the appellant was sentenced upon each count to two consecutive sentences of life without parole. Upon appeal, the appellant raises the following issues: (1) whether the evidence was sufficient to support the verdicts; (2) whether the court erred in ruling the defendant's prior bad acts could be introduced by the State if the defendant presented an alibi defense; (3) whether the court erred in allowing the State to introduce over four hundred pairs of women's undergarments seized from the defendant in an investigation in another county; (4) whether the trial court erred in not suppressing the photographic array; and (5) whether the appellant qualified for sentencing as a repeat violent offender. Finding no reversible error, the judgments are affirmed.

**Tenn. R. App. P. 3; Judgment of the Criminal Court affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which THOMAS T. WOODALL, J. and NORMA MCGEE OGLE, J., joined.

James Robin McKinney, Jr., Nashville, Tennessee, for the appellant.

Paul G. Summers, Attorney General and Reporter, Michael Moore, Solicitor General, Todd R. Kelley, Assistant Attorney General, Victor S. (Torry) Johnson, III, District Attorney General, and John Zimmermann, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The appellant, Calvin Otis Tanksley, was indicted for the offenses of rape of a child and the attempted rape of a child by a Davidson County Grand Jury. The State gave notice of its intent to seek enhanced punishment as a repeat violent offender under the "three strikes" statute for each

offense.[1]  Following his convictions by a jury for both offenses, the trial court sentenced the appellant to two consecutive life sentences without parole, pursuant to Tenn. Code Ann. § 40-35-120.  The appellant has timely appealed to this Court asserting the following errors: (1) the evidence was insufficient to support the verdict; (2) the trial court erred by ruling that the defendant's prior bad acts could be introduced by the State if he provided alibi witnesses; (3) the trial court erred by introducing several hundred pairs of women's undergarments seized from the defendant; (4) the trial court erred by not suppressing the photographic array; and (5) the trial court failed to comply with the requirements of Tenn. Code Ann. § 40-35-120 when it sentenced the defendant to life without parole as a violent offender.  Upon review, we affirm the judgment of the Criminal Court of Davidson County.

## Background

On May 6, 1995, Tanya Briggs gave her six-year-old niece, B.B., some change and asked her to go purchase a soft drink from a machine located inside the laundry room of her apartment complex.[2]  As B.B. entered the laundry room, she encountered the appellant who asked her "Do you want any panties?"  The appellant then grabbed B.B., put his hand over her mouth, and placed her on the floor.  He pulled B.B.'s shorts and panties down and proceeded to digitally penetrate B.B.'s vagina.  The appellant next attempted to make B.B. perform oral sex upon him.  He placed his penis on B.B.'s lips, but she never opened her mouth.  The appellant stood B.B. up and she urinated on herself.  When he saw through the laundry room windows that two people were about to enter the building, he placed B.B. back on the floor, told her to pull her pants up, and immediately left the laundry room.

Kimberly Gilkeson and her husband, Jimmy Gilkeson, lived in the same apartment complex and had just parked directly in front of the laundry room.  Kimberly parked her car beside the appellant's car, which was backed into the parking spot.  Both Kimberly and Jimmy immediately noticed a young blond-headed male child, buckled into a car seat, in the appellant's car.  As Kimberly was attempting to exit her car, the appellant walked out of the building.  Due to the position of Kimberly's car in relation to the appellant's car, Kimberly had to wait for the appellant to get into his car before she could exit her vehicle.  The rapist said "hello" or "something like that" to Kimberly, got in his car, and left. Kimberly testified that she made eye contact with the appellant and observed him for approximately 15 seconds.

Kimberly, followed shortly thereafter by her husband, proceeded into the laundry room.  When she entered the facility, she found B.B. "hysterically crying and upset."  B.B. repeatedly told Kimberly and her husband that "that man tried to kill me."  B.B.'s hair was "real disheveled on her

---

[1] Both rape of a child and attempted rape of a child are classified as violent offenses.  Tenn. Code Ann. § 40-35-120(b)(1)(F).

[2] "Consistent with our policy, we will withhold the identity of young children involved in sexual abuse cases." State v. Schimpf, 782 S.W.2d 186, 188 n.1. (Tenn. Crim. App. 1989).

head, kind of standing up in parts." There was also change scattered across the floor of the laundry room. Kimberly and her husband took B.B. back to her aunt's apartment and then returned to the laundry mat. Upon returning, Kimberly noticed a puddle of urine in the floor and wiped it up with a pair of panties she found in the floor of the laundry room.

## I. Sufficiency of the Evidence

The appellant asserts that the evidence produced at trial was insufficient to support the guilty verdicts. Specifically, he alleges that "there was no physical evidence, either fingerprint, DNA, fibers, or any other evidence whatsoever" to link him to the crimes. The appellant further contends that the evidence was deficient because B.B. failed to identify him at trial.

A jury conviction removes the presumption of innocence with which a defendant is cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Likewise, it is not the duty of this Court to revisit questions of witness credibility on appeal, that function being within the province of the trier of fact. *See generally* State v. Adkins, 786 S.W.2d 642, 646 (Tenn. 1990); State v. Burlison, 868 S.W.2d 713, 718-19 (Tenn. Crim. App. 1993). Instead, the defendant must establish that the evidence presented at trial was so deficient that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994), *cert. denied*, 513 U.S. 1086, 115 S.Ct. 743 (1995); Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992), *cert denied,* 507 U.S. 954, 113 S.Ct. 1368 (1993).

In the present case, both Kimberly and her husband, Jimmy, identified the appellant from a pre-trial photographic array, and again at trial, as the same person who was exiting the laundry room immediately after B.B. was sexually assaulted. No other person was observed in the laundry room or in the immediate vicinity of the victim. The victim's aunt testified that B.B. returned to her apartment "hysterical" and had urinated on herself. Such testimony corroborates both the victim's testimony and the testimony of Kimberly and Jimmy. B.B. immediately told her aunt that "that man had tried to kill her" and subsequently explained that he had touched her private parts.

Additionally, the description of the rapist's car matched the vehicle driven by the appellant. Both Kimberly and Jimmy testified that a young blond-headed boy was in the rapist's car when they arrived at the laundry room. At the time of the incident, the appellant had a child of like description and age. Although the appellant had somewhat changed his appearance at the time of trial, the physical appearance of the appellant also matched the descriptions given by B.B. and the other witnesses as that of the rapist.

The appellant was convicted of rape of a child and attempted rape of a child. In order to convict the appellant of rape of a child, the jury must find (1) unlawful sexual penetration of a victim by the defendant, and (2) the victim was less than thirteen years old. Tenn. Code Ann. § 39-13-522. Likewise, "a person commits criminal attempt who, acting with the kind of culpability required for the offense ... [a]cts with intent to complete a course of action ... and the conduct constitutes a substantial step toward the commission of the offense." Tenn. Code Ann. § 39-12-101(3). Proof of sexual penetration and attempted sexual penetration was established through the testimony of the six-year-old victim. The identity of the appellant as the person who committed these crimes was established circumstantially by the testimony of Kimberly and Jimmy Gilkeson. Circumstantial evidence alone is sufficient to support a conviction. State v. Buttry, 756 S.W.2d 718, 821 (Tenn. Crim. App. 1998). If a conviction is based purely on circumstantial evidence, however, the facts and circumstances must be so overwhelming as to exclude any other explanation except for the defendant's guilt. State v. Black, 815 S.W.2d 166, 175 (Tenn. 1991); State v. Tharpe, 726 S.W.2d 896, 900 (Tenn. 1987). Having thoroughly reviewed the record, we conclude that the evidence was sufficient to establish the elements of the offenses beyond a reasonable doubt.

## II. Alibi Defense

The appellant contends that the trial court erred by ruling that the State could introduce evidence of the appellant's prior bad acts if he introduced an alibi defense. In response, the State contends that the trial court did not err because the appellant "made identity a central issue by asserting an alibi defense."

It is well-established, of course, that in a criminal trial, evidence that the defendant has committed some other crime wholly independent of that for which he is charged, even though it is a crime of the same character, is usually not admissible because it is irrelevant. Bunch v. State, 605 S.W.2d 227, 229-230 (Tenn. 1980); State v. Parton, 694 S.W.2d 299, 302 (Tenn. 1985). The holdings of both Bunch and Parton are embodied in the Tennessee Rules of Evidence, Rule 404(a) and 404(b), and were adopted by the General Assembly, effective January 1, 1990. Rule 404(b) provides:

> **(b) Other Crimes, Wrongs, or Acts.** Evidence of other crimes wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:
>
> (1)    The court upon request must hold a hearing outside the jury's presence;
> (2)    The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and

(3)    The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

The general rule excluding evidence of other crimes is based on the recognition that such evidence easily results in a jury improperly convicting a defendant for his or her bad character or apparent propensity or disposition to commit a crime regardless of the strength of the evidence concerning the offense on trial. State v. Rickman, 876 S.W.2d 824, 828 (Tenn. 1994); *See also* Anderson v. State, 56 S.W.2d 731 (1933). There are, however, exceptions to Rule 404(b). Although Rule 404(b) does not explicitly list these exceptions, case law has held that evidence of other crimes may be admissible to show (1) motive; (2) intent; (3) guilty knowledge; (4) identity of the defendant; (5) absence of mistake; or (6) a common scheme or plan for commission of two or more crimes so related to each other that proof of one tends to establish the other. Collard v. State, 526 S.W.2d 112, 114 (Tenn. 1975); State v. Hoyt, 928 S.W.2d 935, 944 (Tenn. Crim. App. 1995).

In the present case, the appellant sought to introduce an alibi defense in response to the allegations made against him. After conducting a Rule 404(b) hearing, the trial court ruled:

THE COURT:    Now if you are contesting, or if you are advancing an alibi theory, then that puts identity right square at issue. And identity is one of the exceptions to 404 that allows evidence of this nature.

THE COURT:    What I'm telling you is this: That if you advance your theory of alibi, in all probability, this material is going to be admissible. Until you open the door it is not admissible.

***

MR. MCKINNEY:    Just so I'm clear: Your Honor is going to exclude the evidence in their case in chief, as far as these specific instances of conduct, unless I open the door, and Your Honor is going to allow them to offer it in their rebuttal.

THE COURT:    That's correct. That's exactly what I'll do.

When the trial court substantially complies with the requirements of Rule 404(b), we review the trial court's determination for an abuse of discretion. State v. DuBose, 953 S.W.2d 649, 652 (Tenn. 1997).

The State contends that evidence of the appellant's commission of "other crimes" is admissible under the common scheme or plan exception. In Tennessee, there are three types of common scheme or plan evidence: (1) offenses that reveal a distinctive design or are so similar as to constitute "signature" crimes; (2) offenses that are part of a larger, continuing plan or conspiracy;

and (3) offenses that are all part of the same criminal transaction. State v. Hoyt, 928 S.W.2d at 944. "The most common basis for offering evidence of a distinctive design is to establish the identity of the perpetrator." State v. Shirley, 6 S.W.3d 243, 248 (Tenn. 1999); *see also* State v. McCary, 922 S.W.2d 511, 514 (Tenn. 1996). If a distinctive design can be shown, the evidence of offenses constituting a common scheme or plan are relevant, and therefore, admissible. State v. Shirley, 6 S.W.3d at 248. Before multiple offenses may be said to be a distinctive design, however, the "modus operandi employed must be so unique and distinctive as to be like a signature." Id.; State v. Carter, 714 S.W.2d 241, 245 (Tenn. 1986). Although the offenses do not have to be identical in every respect, the methods used in committing the offenses must have "such unusual particularities that reasonable men can conclude that it would not likely be employed by different persons." Id. "Only when the method used to commit the crimes is so unique as to be like a signature can the inference of identity properly arise." Id. In the present case, the identity of the rapist would have become the central issue had the appellant relied upon a defense of alibi. The appellant's alibi was that he met a female friend in a parking lot on May 6, 1995, from 1:45 p.m. to 3:30 p.m. to work on her computer. At trial, the State argued that two of the appellant's past offenses were, in fact, "signature" crimes, and therefore, admissible if the appellant utilized an alibi defense. We agree that two of the appellant's past acts were "signature crimes" and find the trial court's ruling was proper.

The acts which the trial court would have introduced as signature crimes, had the appellant presented his alibi defense, consisted of two prior acts. The appellant pled no-contest on one charge and the other charge was dismissed. The first incident occurred during late afternoon on May 7, 1995, in an apartment complex known as Pheasant Run Apartments. A three-year-old girl had been playing in front of an apartment building when she was approached by a white male who asked if she wanted to go with him to get some hamburgers. She declined the offer. The appellant got out of his car and followed her into the stairwell. The appellant took the victim farther up the stairwell, removed her panties, and asked if he "could lick her pee pee." When the child said no, the appellant digitally penetrated her with his finger and asked her to touch his genital area. The child refused to touch the appellant. The appellant then put her panties back on and left. A five-year-old friend of the victim witnessed the incident. The victim described the rapist as a white male, approximately six feet tall, with a long, dark ponytail. She also described the rapist's car as blue with a luggage rack and an antenna. The victim identified the appellant as her rapist in a photo lineup.

The second incident took place during the afternoon of May 27, 1995, in an apartment complex known as Wessington House Apartments. Several children were playing in the breezeway of an apartment building when they were approached by a white male who told them that there were clowns, candy, toys, and balloons in the laundry room. The five-year-old victim and her three-year-old sister ran to one of the two laundry rooms at the apartment complex. The appellant followed them into the laundry room and lifted the victim onto a counter. The appellant pulled her clothes over her head, removed her panties, fondled her vaginal area, and "licked her." The appellant then told the victim to put her panties back on and left the room. The victim described her assailant as being older than her mother, approximately six feet tall, with dark hair in a ponytail. The victim

described the perpetrator's car as blue and stated some children were inside the vehicle. Both the victim and her sister identified the appellant as the rapist in a photo lineup.

Upon comparing and examining the three crimes and the methods used to commit those crimes, we are convinced that the evidence is so unique as to bear the stamp of the appellant. All three instances took place on the premises of an apartment complex, in either the apartment stairwell or the apartment laundry room. All three attacks occurred during afternoon hours. All of the three victims were females between the ages of three and six. In each case, the rapist left in a blue car. All victims were either offered or promised something immediately before the attack. All three cases involved either digital penetration or oral sex and the rapist never attempted sexual intercourse. In two of the cases, witnesses stated that a child or young children were present in the rapist's car while the attack was taking place. Moreover, all three attacks took place in less than a three week period during May of 1995.

In Warren v. State, 156 S.W.2d 416, 419 (Tenn. 1941), our supreme court set forth two conditions which must be met before proof of prior bad acts can be admitted: (1) The proof must show "such similarity in the circumstances of the commission of the two offenses as to afford evidence of the identity of the offender," and (2) there must be a genuine issue before the jury as to the identification of the accused, such as by denial or the presentment of an alibi witness. "To be relevant and, therefore, admissible, it is not necessary that the other crime be identical in every detail to the offense on trial; it is sufficient if evidence of the other crime supports the inference that the perpetrator of it, shown to be the defendant, is the same person who committed the offense on trial." Bunch v. State, 605 S.W.2d 227, 231 (Tenn. 1980).

It is clear from the record before us that had the appellant introduced an alibi defense, he would have directly placed his identity in question. It is also obvious that the three crimes committed were so similar in method and nature as to constitute a "signature." "The defense of alibi presents an issue of fact terminable by the jury, as the exclusive judges of the credibility of the witnesses testifying in support of that defense and of the weight to be given their testimony." White v. State, 533 S.W.2d 735, 737 (Tenn. Crim. App. 1975). The trial court did not prevent the appellant from going forward with his alibi defense, but merely ruled that if he did so his prior bad acts would be admissible for purposes of identity. We conclude the trial court's ruling was correct. Accordingly, we find that the trial court did not err in ruling that the signature crimes could be admitted into evidence if the appellant had placed his identity in question by presenting an alibi defense.

### III. Introduction of Undergarments Into Evidence

The appellant asserts that the trial court erred by allowing the State to introduce evidence that the defendant had over four hundred pairs of women's undergarments in his possession. Specifically, he contends that "the undergarments were neither relevant nor probative to the finding of guilt or innocence [and] the introduction of the undergarments had a chilling effect upon the jury."

In response, the State argues that the collection of women's undergarments was relevant to the case because the rapist offered B.B. panties before attacking her.

Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Tenn. R. Evid. 401. Although relevant evidence is generally admissible pursuant to Rule 402, the evidence may still be excluded if its probative value is substantially outweighed by the danger of unfair prejudice to the defendant. Tenn. R. Evid. 402 & 403. The decision of whether the evidence introduced is relevant or the decision of whether the evidence is more prejudicial than probative is left to the discretion of the trial court. State v. Kennedy, 7 S.W.3d 58, 68 (Tenn. Crim. App. 1999); State v. Forbes, 918 S.W.2d 431, 449 (Tenn. Crim. App. 1995); State v. Burlison, 868 S.W.2d 713, 720-721 (Tenn. Crim. App. 1993). In making these decisions, the trial court must consider the questions of fact that the jury will have to consider in determining the accused's guilt as well as other evidence that has been introduced during the course of the trial. State v. Kennedy, 7 S.W.3d at 68; State v. Williamson, 919 S.W.2d 69, 78 (Tenn. Crim. App. 1995).

In the present case, we agree that the introduction of women's undergarments was not relevant to the existence of any issue that the jury had to decide and, thus, was improperly admitted. We conclude, however, that the appellant was not unfairly prejudiced by their admission. Based upon the strength of the remaining proof establishing the appellant's guilt, we find the introduction of these undergarments harmless. Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a).

## IV. Photographic Array

The appellant argues that the photographic array shown to the witnesses was unduly suggestive and asserts the trial court erred by not suppressing it. Specifically, the appellant contends that he was the only person pictured with a pony-tail and that his picture was lighter in color than the other four pictures. Additionally, the appellant asserts that the photographic array was tainted by the mere seconds the witnesses had to witness the alleged assailant.

Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eye-witnesses to exonerate them through the scrutiny of photographs. Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971 (1968). In Simmons, the United States Supreme Court refused to prohibit the employment of photographic identification and held that "each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. at 384, 88 S.Ct. at 971. " A trial court's finding that the identification procedure was not suggestive is conclusive on appeal unless the evidence preponderates against the judgment." State v. Davis, 872 S.W.2d 950, 955 (Tenn. Crim. App. 1993); Chapple v. State, 528 S.W.2d 62, 63 (Tenn. Crim. App. 1975).

In Bolton v. State, 617 S.W.2d 909, 913 (Tenn. Crim. App. 1981), this Court reiterated the five factors to be considered when evaluating the suggestiveness of photographic identification:

> The test of whether use of impermissibly suggestive identification procedures will require exclusion of a witness's in-court identification is whether the in-court identification is reliable under the totality of the circumstances, including the opportunity of the witness to view the offender at the time of the crime, the witness's degree of attention, the accuracy of the prior description of the offender, the level of certainty of the witness at the confrontation, and the length of time between the crime and the confrontation. Neil v. Biggers, 409 U.S. 188, 199, 93 S.Ct. 375, 382 (1972); Manson v. Brathwaite, 432 U.S. 98, 97 S. Ct. 2243 (1977); Rippy v. State, 550 S.W.2d 636, 639-640 (Tenn. 1977); State v. Davis, 872 S.W.2d 950, 955-956 (Tenn. Crim. App. 1993).

In the present case, the photographic array consisted of five photographs of men of like age. All five men had characteristics similar to what the witnesses had previously described. All men had short hair on top and long hair in the back which was shoulder length or longer. Although the appellant argues he was the only person with a ponytail in the photograph, it is not clear from the photograph that the appellant's hair was in a ponytail. Additionally, the appellant correctly points out that his photograph is the lightest of the photographs on display, however, the color of all the photographs varied. The appellant also argues that his was the only mugshot. All identifying material, except the actual photos themselves, was blocked by a flap covering the photographic array. Moreover, all pictures did, in fact, appear to be mugshot-style pictures. The detective never suggested who the appellant might be to the witnesses when they viewed the photographs. Therefore, we find that the photographic display was not unconstitutionally suggestive.

The appellant further asserts that the photographic array was "tainted" because the identifying witnesses only saw him for seconds. We disagree. The general rule is that an in-court identification is inadmissible if it was tainted by an unconstitutional pretrial identification. State v. Davis, 872 S.W.2d at 956; Holt v. State, 591 S.W.2d 785, 789-790 (Tenn. Crim. App. 1979). Three witnesses identified the appellant from the line-up. One witness was the victim. One witness testified that she made eye contact with the appellant, saw him for approximately fifteen seconds, and exchanged greetings with him. All three witnesses identified the appellant from the line-up within seconds of being given the photographic array. Two of the witnesses testified at trial that the appellant was the person leaving the laundry room on the day in question. "A trial court's findings upon question of fact on a motion to suppress are conclusive on appeal unless the evidence is found to preponderate against the lower court's judgment." State v. Davis, 872 S.W.2d at 956. Consequently, we do not find that the photographic array was tainted or unconstitutionally suggestive.

## V. Sentencing

The appellant asserts that the State failed to comply with the provisions of the "three strikes" statute outlined in Tenn. Code Ann. § 40-35-120 *et seq.* Specifically, he alleges that the State: (1) failed to file timely notice of his status as a repeat violent offender; and (2) failed to try him within 180 days of arraignment. The appellant also summarily asserts that he did not have the prerequisite convictions required for classification as a repeat violent offender as required by Tenn. Code Ann. § 440-35-120. Moreover, he argues that the two consecutive life without parole sentences are "redundant and excessive."

### A. Classification as a Repeat Violent Offender

First, we address the appellant's issue that he "did not have the prerequisite convictions classified in Tenn. Code Ann. § 40-35-120" and therefore was erroneously found to be a repeat violent offender. As relevant to this case, the "three-strikes" provision, Tenn. Code Ann. § 40-35-120(a), defines a repeat violent offender as one who:

(1)     Is convicted in this state on or after July 1, 1994, of any offense classified in subdivision (b)(1) as a violent offense; and

(2)     Has at least two (2) prior convictions for offenses classified in subdivision (b)(1) or (b)(2) as a violent offense.

The appellant was convicted of rape of a child and attempted rape of a child, which constitute violent offenses under Section 1 above. *See* Tenn. Code Ann. § 40-35-120(b)(1)(F). The appellant was previously convicted in November 1975, in the Shelby County Criminal Court, of two counts of robbery with a deadly weapon and was again convicted in January 1981, in the Humphreys County Circuit Court, for armed robbery. His convictions for armed robbery in 1975 and robbery by use of a deadly weapon in 1981 resulted in two separate periods of incarceration and are enumerated in Tenn. Code Ann. § 40-35-118 as Class B felonies against a person. Accordingly, we find the appellant was properly classified as a repeat violent offender under the provisions of Tenn. Code Ann. § 40-35-120(a)(1) & (2).

### B. 45-Day Rule

The appellant next contends that he should not have been sentenced as a repeat violent offender because the State failed to give notice of the appellant's status as a repeat offender within forty-five days of his arraignment. In response, the State argues that the appellant was properly sentenced and cites to State v. Dee W. Thompson, No. 01C01-9812-00490 (Tenn. Crim. App. at Nashville, Mar.17, 2000), in support of its argument. Tenn. Code Ann. § 40-35-120(i)(2)(1997) provides:

> The district attorney general shall file a statement with the court and the defense counsel within forty-five (45) days of the arraignment pursuant to Rule 10 of the Rules of Criminal Procedure that the defendant is a repeat violent offender...If such notice is not filed within forty-five (45) days of such arraignment, the defendant shall be

granted a continuance so that such defendant will have forty-five (45) days between receipt of notice and trial.

Under the Repeat Violent Offender Statute, or "three-strikes" statute, offenders convicted of specified violent offenses who have a record of certain proven predicate convictions qualify for an automatic sentence of life without parole, rather than the variable sentencing under the usual statutory scheme of offender ranges and offense classes. *See* State v. Dee W. Thompson, No. 01C01-9812-00490; Tenn. Code Ann. § 40-35-120 (1997). The State is required to file with the court and the defense counsel a statement that indicates the defendant is a repeat violent offender within forty-five days of the arraignment. Tenn. Code Ann. § 40-35-120(i)(2)(1997). If the notice is not timely filed, the defendant shall be granted a continuance so that he has forty-five days between the date of notice and the date of trial. Id. If the State fails to comply with the notice requirements, the defendant is not entitled to release from custody or dismissal of the charges. Tenn. Code Ann. 40-35-120(i)(3).

In the present case, the appellant was originally arraigned on November 29, 1995. The State gave notice of the appellant's status as a repeat violent offender on February 14, 1996. Consequently, the State failed to file notice within forty-five days from the date of arraignment. The State acknowledges this untimeliness in its brief. The remedy, however, is not dismissal of the charges or the release of the appellant from custody, but rather the assurance that the appellant will receive forty-five days between notice and trial. Tenn. Code Ann. § 40-35-120 (i)(2) & (i)(3) (1997). The appellant received notice on February 14, 1996, and his trial was held on December 7, 1997. Thus, the defendant received ample time to prepare after notice was given. Furthermore, the appellant has alleged no prejudice from the untimely delay. "A common thread in each of these cases is the focus on whether the defendant has been prejudiced by the state's defective or delayed notice." State v. Dee W. Thompson, No. 01C01-9812-00490. The defense itself admitted that they were "not claiming, under these facts, any ultimate prejudice." Consequently, this issue is without merit.

### C. 180-Day Rule

The appellant next alleges that the State did not comply with the requirements set forth in Tenn. Code Ann. § 40-35-120 (I)(1) because he was not brought to trial within one hundred eighty days of arraignment. Tenn. Code Ann. § 40-35-120(i)(1)(1997) provides:

> A charge as a repeat violent offender shall be tried within one hundred eighty (180) days of the arraignment on the indictment pursuant to Rule 10 of the Rules of Criminal Procedure unless delay is caused by: (A) The defendant; (B) An examination for competency; (C) A competency hearing; (D) An adjudication of incompetency for trial; (E) A continuance allowed after a court's determination of the defendant's physical incapacity for a trial; or (F) an interlocutory appeal. A continuance may be granted to any party, including the court, for good cause shown.

The appellant was arraigned on November 29, 1995, and tried on December 7, 1997. Thus, more than one hundred eighty days elapsed between arraignment and trial. Once again, however, the appellant alleges no prejudice from this delay. In State v. Dee W. Thompson, No. 01C01-9812-00490, this

Court concluded that the one hundred eighty day rule was not intended to "benefit a defendant," but merely was a mechanism whereby society could be assured of "swift and certain punishment." See State v. Wilcoxson, 772 S.W.2d 33 (Tenn. 1989). Without a showing of prejudice, the appellant is entitled to no relief. Therefore, this issue is also without merit.

### D. Consecutive Sentences

Finally, the appellant asserts that the two consecutive sentences he received were "redundant and excessive." The appellant, however, failed to cite any authority to support this position. Consequently, this issue is waived. Tenn. R. App. P. 27(a)(4) - (a)(7). The sentencing decision of the trial court is affirmed.

## CONCLUSION

The trial court erred by introducing evidence that the appellant had over four hundred pairs of women's undergarments in his possession. However, we find this error to be harmless. All other issues are without merit or are waived. The judgments of conviction and sentences imposed by the Davidson County Criminal Court are affirmed.

_____
DAVID G. HAYES, JUDGE