# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
January 6, 2000 Session

## JIMMY JOE SAVAGE, ET AL. v. DON HILDENBRANDT

**Appeal from the Chancery Court for Perry County**
**No. 3856-II      Russ Heldman, Chancellor**

---

**No. M1999-00630-COA-R3-CV - Filed September 6, 2001**

---

This appeal involves a dispute among neighbors arising out of a couple's decision to place a double-wide mobile home on their property. After one of their neighbors blocked the access road to their property to prevent them from setting up their mobile home, the couple who owned the mobile home filed suit in the Chancery Court for Perry County seeking injunctive relief and damages. In response, two of the neighboring property owners requested the trial court to establish the boundary lines, to enjoin the couple from encroaching on their property, and to award actual and punitive damages for the damage that the couple's encroachment had caused to their property. Following a bench trial that continued past midnight and a series of post-trial motions requesting various corrections in the judgment, the trial court eventually established the disputed boundary line and awarded the couple a $6,110.50 judgment against one of their neighbors to compensate them for the damages stemming from the delay in setting up their mobile home. The two neighboring property owners have appealed. They take issue with (1) the trial court's decision to hold court past midnight, (2) the manner in which the trial court considered and disposed of their post-judgment motions, (3) the trial court's decision regarding the location of the southern boundary line of the couple's property, and (4) the trial court's failure to reduce the $6,110.50 judgment by the amount of the damages the couple's encroachment had caused. We have concluded that the trial court did not commit reversible error during either the trial or the post-trial proceedings and that the trial court's decision to award the couple $6,110.50 is supported by the evidence. However, we have also concluded that the evidence preponderates against the trial court's decision regarding a portion of the couple's southern boundary line. Accordingly, we remand the case for the sole purpose of correcting the error regarding a portion of this boundary line.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Modified and Affirmed

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

David H. King, Franklin, Tennessee (on appeal), for the appellant, Don Hildenbrandt and third-party plaintiff appellant, Lossie Ledbetter.

Michael E. Spitzer, Hohenwald, Tennessee, for the appellees, Jimmy Joe Savage and Frances Joy Savage.

**OPINION**

**I.**

R. T. Ledbetter and his wife owned a large tract of land adjoining State Route 100 near Linden in rural Perry County. A significant portion of this tract was wooded. In June 1933, they conveyed a 1.73-acre tract to Lillie Gladden who was their daughter's mother-in-law.[1] R. T. Ledbetter's woodlands bordered Ms. Gladden's tract to the east and the south. An old dirt road, variously referred to as the "Ridge Road" or the "Old Woods Road" also ran along the southern boundary of Ms. Gladden's property. R. T. Ledbetter used this road for access to his timber from State Route 100. Ms. Gladden eventually built her house on the southern portion of her property near the Ridge Road, and through the years, both she and R. T. Ledbetter used the Ridge Road to gain access to their property from State Route 100.[2]

In August 1945, after R. T. Ledbetter died, six of his seven children sold their interests in his real property to their sister, Norma Hildenbrandt and her husband, John Hildenbrandt. In October 1945, the Hildenbrandts sold a portion of the property to Sam Ledbetter, Ms. Hildenbrandt's brother. Accordingly, at the close of 1945, Ms. Gladden's property abutted the Hildenbrandts' property to the south, Sam Ledbetter's property to the east, and State Route 100 to the northwest. All the parties continued to use the Ridge Road to gain access to their property. They believed that the Ridge Road marked the boundary between Ms. Gladden's property and the Hildenbrandts' property and that the boundary between Ms. Gladden's property and Sam Ledbetter's property was an old fence that ran through the woods.

All the dealings between the parties remained amicable for over fifty years. In November 1986, Ms. Gladden conveyed her property to her grandson, Jimmie Joe Savage, and his wife, Francis Joy Savage.[3] The Savages eventually decided to replace Ms. Gladden's old house with a double-wide mobile home. Accordingly, they demolished Ms. Gladden's old house and in the fall of 1997 began to prepare the site for their mobile home. Shortly after they started their site preparations, the Savages received notice from Don Hildenbrandt that their improvements were encroaching on his

---

[1] The following day, Ms. Gladden acquired another contiguous tract from Edna Harris. This tract, comprising approximately one-third of an acre, had separated the tract Ms. Gladden had acquired from R. T. Ledbetter and his wife from State Route 100. Following the purchase, a small portion of Ms. Gladden's northwestern boundary line abutted the highway.

[2] Ms. Gladden used this road because other portions of her property were separated from the highway by a gulch. Even though there was another road connecting Ms. Gladden's property with the highway, Ms. Gladden and her guests used the Ridge Road to enter her property because the other road was so steep. However, they used the other road to exit the property because it provided a safer entry onto the highway.

[3] The description of the property in the deed from Ms. Gladden to the Savages did not match the description of the property in the deed from R. T. Ledbetter to Ms. Gladden. Mr. Savage apparently retained a surveyor to prepare a legal description of the property, and this description was used rather than the earlier one.

property.[4]  Mr. Hildenbrandt was not pleased with the Savages' decision to place a mobile home on their property[5], and he eventually stopped the Savages from moving the mobile home onto their property by blocking the Ridge Road with metal fence posts.

Mr. Hildenbrandt's fence post barricade prompted the Savages to file suit against him in the Chancery Court for Perry County to remove the obstructions, to enjoin Mr. Hildenbrandt from placing other obstructions in the Ridge Road, and to recover the damages they had incurred because of the delay in moving into their mobile home.  Mr. Hildenbrandt counterclaimed for a declaration of the location of their boundary lines, an injunction against the Savages encroaching on his property, and monetary damages.  Eventually, Lossie Ledbetter, Sam Ledbetter's 88-year-old widow, filed an "intervening complaint" against the Savages likewise asserting that their encroachments had damaged her property and likewise seeking an injunction against further encroachment and monetary damages.[6]

The trial commenced around midday on October 5, 1998, and continued past midnight.  Mr. Savage asserted that he and his wife owned all the property that had been conveyed to Ms. Gladden.  He also insisted that the Ridge Road was on Mr. Hildenbrandt's property and that he had never claimed that he owned "any interest in the property on the 'ridge' side of the ridge road."  He stated that if the trial court "gave the ridge road to me, I would . . . give it back."  However, Mr. Savage and his other witnesses testified that Ms. Gladden and her associates had continuously used the Ridge Road to gain access to her property.

Mr. Savage also acknowledged that he had cleared brush and scrub trees along the Ridge Road in preparation of moving his mobile home onto his property but asserted that the brush and scrub trees were north of the Ridge Road and were on his property.  With regard to the Savages' damage claim, Mr. Savage testified that he and his wife had sold their residence in anticipation of moving into their new mobile home and that because of the obstruction to the Ridge Road, they had been required to rent another residence for nine months and had also been required to rent storage units for their furniture.  He also testified that he had been required to purchase materials to prevent damage to the two halves of the mobile home that had been sitting unassembled on his property.  The total of these expenses was $6,110.50.

The Savages also presented the testimony of Thomas White, a registered surveyor.  Mr. White testified that none of the descriptions in the parties' deeds closed and that there were misdirections in the calls in the 1945 deed from R. T. Ledbetter's heirs to John and Norma Hildenbrandt.  Under questioning by the parties' lawyers and extensive examination by the trial

---

[4]Don Hildenbrandt has succeeded to the ownership of his parents' property located to the south of the tract formerly owned by Ms. Gladden.

[5]Mr. Hildenbrandt actually warned the Savages that if they moved a mobile home onto their property, he "would doze it down."

[6]The intervening complaint was actually filed on Lossie Ledbetter's behalf by her daughter, Joann Holder.  Ms. Holder possessed her mother's power-of-attorney.  It is perhaps more than coincidence that Joann Holder is Don Hildenbrandt's cousin.  Mr. Hildenbrandt and Ms. Ledbetter were represented by the same lawyer at trial.

court, Mr. White opined that the 1933 deed from R. T. Ledbetter to Ms. Gladden actually conveyed .28 acres of property south of the Ridge Road to Ms. Gladden and, therefore, that the Savages actually owned a portion of the Ridge Road, as well as the .28-acre tract south of the Ridge Road.[7]

Mr. Hildenbrandt and Ms. Ledbetter did not present a surveyor to contradict the conclusions of Mr. White. They argued instead that the parties' deeds were so flawed that they should play no role in determining the location of the Savages' eastern and southern boundary lines. They also presented a number of witnesses who testified that R. T. Ledbetter, R. T. Ledbetter's heirs, and Ms. Gladden had always understood, despite the suggestion in Ms. Gladden's 1933 deed from R. T. Ledbetter, that the southern boundary of Ms. Gladden's property was the Ridge Road and that the eastern boundary of her property was a fence in the woods. Ms. Ledbetter presented no evidence regarding her claim that the Savages' encroachment had damaged her property. With regard to Mr. Hildenbrandt's damage claim, Mr. Hildenbrandt and Robert Mathis testified that Mr. Savage had bulldozed a number of large trees along the Ridge Road that had been planted to prevent erosion on Mr. Hildenbrandt's property.

When the trial concluded at approximately 11:50 P.M., the trial court stated that it would proceed to rule from the bench despite the lateness of the hour. The court announced that it accepted Mr. White's conclusions that the southern boundary of the Savages' property, as reflected in R. T. Ledbetter's 1933 deed to Ms. Gladden, included the .28-acre tract south of the Ridge Road. Accordingly, the trial court reasoned that both the Savages and Mr. Hildenbrandt owned portions of the Ridge Road and that they both had the right to use the road to enter and leave their property.

With regard to the damage claims, the trial court concluded that Mr. Hildenbrandt and Mr. Mathis had wrongfully prevented the Savages from using the Ridge Road. However, the court declined to award damages to the Savages "based upon equitable principles arising out of the plaintiffs [Savages] cutting of trees that may have been on the third party plaintiff's [Ms. Ledbetter's] lands."[8] A judgment reflecting the trial court's ruling from the bench was filed on November 4, 1998.

The entry of the November 4, 1998 judgment triggered lengthy and tortuous post-trial proceedings. On November 20, 1998, Mr. Hildenbrandt and Ms. Ledbetter filed a "motion to reconsider" asserting that the trial court had prevented them from effectively presenting their case by conducting the trial until 12:20 A.M. and by allowing only short recesses without a dinner break. They asserted that "some of their witnesses were elderly and in poor health," that they had been in

---

[7]Mr. White acknowledged that the 1945 deed from R. T. Ledbetter's heirs to the Hildenbrandts suggested that Ms. Gladden did not own any property south of the northern edge of the Ridge Road. However, he opined that R. T. Ledbetter's heirs could not convey the .28-acre tract south of the Ridge Road to the Hildenbrandts because R. T. Ledbetter had conveyed it to Ms. Gladden twelve years earlier.

[8]Even though Ms. Ledbetter had presented no evidence of damage to her property caused by the clearing undertaken by the Savages, the trial court authorized Ms. Ledbetter to sue the Savages "at the end of one year" if the "runoff arising directly from the removal of timber and undergrowth along the ridge road by the plaintiffs." Mr. Hildenbrandt was the only witness who testified that he used the trees planted along the Ridge Road to prevent erosion on his property.

-4-

the courtroom since 9:00 A.M., and that the manner in which the trial had been conducted had been "very difficult" for their witnesses "who suffered from hunger and fatigue." On December 3, 1998, the trial court, treating the motion to reconsider as a Tenn. R. Civ. P. 59.04 motion, entered an order that "suspended or held [the November 4, 1998 judgment] in abeyance" and that granted Mr. Hildenbrandt and Ms. Ledbetter a limited new trial "only for the purpose of hearing again from those witnesses who were suffering from hunger, fatigue or ill health at the time they were testifying on October 5, 1998." The order also provided that [w]hether the judgment should be altered or amended is reserved pending said hearing to be set by agreement of counsel at the earliest possible date."

On December 4, 1998, the day following the entry of the order granting Mr. Hildenbrandt and Ms. Ledbetter a limited new trial, the Savages filed their own Tenn. R. Civ. P. 59.04 motion to alter or amend. The thrust of their motion was directed at the trial court's conclusion that the Savages' damages were offset by the damages they caused to the neighboring property. In light of the trial court's decision regarding the location of their southern boundary line, the Savages argued (1) that there was no evidence that they removed trees that were not theirs, (2) that they could not have caused damage to the neighboring property, and, therefore, (3) that no offset of their damages was appropriate.[9] The trial court decided to consider the Savages' motion at the same time it conducted the limited new trial, and informed the parties that this hearing would be held on January 14, 1999.

Mr. Hildenbrandt and Ms. Ledbetter retained a new lawyer shortly before the scheduled hearing. Their new lawyer asked the Savages' lawyer for an extension of time to become familiar with the case. The Savages' lawyer accommodated this request and agreed to present their joint request for a thirty-day continuance to the trial court on January 14, 1999. Notwithstanding the parties' agreement, the trial court declined to grant the continuance and announced that it would dispose of the pending motions without hearing additional evidence.

On January 22, 1999, the trial court entered an order addressing the pending motions. First, the trial court stated that it had "sua sponte reconsidered" Mr. Hildenbrandt's and Ms. Ledbetter's November 20, 1998 motion. Reversing its earlier decision to treat this motion as a Tenn. R. Civ. P. 59.04 motion to alter or amend, the trial court concluded that it would not consider their request for relief because they had "filed a pleading not authorized by the Tennessee Rules of Civil Procedure" and that the court had "no duty to create a claim." Accordingly, the trial court denied Mr. Hildenbrandt's and Ms. Ledbetter's post-trial motion requesting an opportunity to present several of their witnesses again. The trial court also ordered that "[t]he judgment entered on November 4, 1998, is no longer held in abeyance and shall be deemed a final judgment for all purposes." The trial court then turned its attention to the Savages' motion to alter or amend. Observing that "there has

_____

[9]The Savages did not point out, as they could have, that the trial court had erroneously determined that the harm that Mr. Hildenbrandt had caused the Savages could somehow be offset by the harm that the Savages had caused Ms. Ledbetter. Mr. Hildenbrandt's damages claim was unrelated to Ms. Ledbetter's damage claim.

-5-

been no response or other rebuttal" to the motion, the trial court granted the requested relief and awarded the Savages a $6,110.50[10] judgment against Mr. Hildenbrandt and Ms. Ledbetter.

The change in the judgment brought about by the trial court's January 22, 1999 order prompted Mr. Hildenbrandt and Ms. Ledbetter to file another post-trial motion on February 19, 1999. In addition to their original complaint about the manner in which the trial court had conducted the October 5, 1998 trial, they argued (1) that they had been denied a fair hearing because Mr. White, the Savages' surveyor, had left the courthouse after being instructed to remain because he was subject to being recalled to the stand, (2) that the trial court had erred by awarding the Savages the .28-acre tract south of the Ridge Road when they had not sought this property in their complaint, (3) that the trial court had erred to the extent it had based its decision regarding the location of the boundary lines on the unreliable deeds, and (4) that the trial court erred by disposing of the Savages' December 4, 1998 post-trial motion without giving them an opportunity to respond.

On March 1, 1999, the Savages moved to dismiss Mr. Hildenbrandt's and Ms. Ledbetter's February 19, 1999 motion. The trial court conducted a hearing on the motion on March 26, 1999. At the outset, Mr. Hildenbrandt and Ms. Ledbetter supplemented their pending post-trial motion with a "motion for relief from order" pursuant to Tenn. R. Civ. P. 60.02(1).[11] In this motion, Mr. Hildenbrandt and Ms. Ledbetter asserted that they had been "surprised" by the trial court's January 22, 1999 decision to dismiss their pending post-trial motion without a hearing, to "reinstate" the November 4, 1998 judgment, and to grant the Savages' post-judgment motion regarding their damages.

During the March 26, 1999 hearing, the trial court informed the parties that it had discovered an error in its January 22, 1999 order. Apparently realizing that the Savages neither asserted nor claimed that they had been damaged by Ms. Ledbetter, the trial court stated that it had never intended to give the Savages a money judgment against Ms. Ledbetter and that it would enter a separate order to "correct" its January 22, 1999 order. Accordingly, on April 12, 1999, the trial court filed an order modifying its January 22, 1999 order to award the Savages a $6,110.54 judgment only against Ms. Ledbetter. The court stated that "[i]t was the original intent of the Court for [a] monetary judgment to be entered against Defendant, Don Hildenbrandt, only" and that parts of its January 22, 1999 order "remain as stated therein."

Finally, on May 24, 1999, the trial court filed an order denying Mr. Hildenbrandt's and Ms. Ledbetter's Tenn. R. Civ. P. 59 and 60 motions. The court explained that it could not consider the Tenn. R. Civ. P. 60 motion without permission from this court and that it could not consider the

---

[10]The amount of the trial court's judgment was $6,110.54; however, the only evidence in the record regarding the amount of the Savages' damages is that their damages amounted to $6,110.50.

[11]Even though this motion is stamped filed on March 29, 1999, three days after the hearing, the transcript of the March 26, 1999 hearing reveals that this motion was presented to and considered by the trial court during the hearing. The record does not reveal the reasons for the three-day delay in the filing of the motion that had been submitted to the trial court on March 26, 1999.

February 19, 1999 motion because it had not been timely filed. Mr. Hildenbrandt and Ms. Ledbetter thereafter perfected this appeal.

## II.
### THE RECORD ON APPEAL

Before taking up the substantive issues in this appeal, we first address the adequacy of the record on appeal. The ability of the appellate courts to review lower court proceedings and to render just and correct decisions depends upon being provided with an appellate record that contains a fair, accurate, and complete account of what transpired in the trial court with respect to the issues that form the grounds for the appeal. The process used to prepare the statements of the evidence in this case, as well as the substance of the statements of the evidence themselves, demonstrate again that statements of the evidence prepared pursuant to Tenn. R. App. P. 24(c) are, in most cases, poor substitutes for verbatim transcripts of the proceedings in the trial court. *Hunt v. Hunt*, No. M1997-00221-COA-R3-CV, 2000 WL 1030622, at *1 n.1 (Tenn. Ct. App. July 27, 2000) (No Tenn. R. App. P. 11 application filed).

None of the parties retained a court reporter for the October 5, 1998 trial of this case. On May 20, 1999, the lawyer representing Mr. Hildenbrandt and Ms. Ledbetter filed a statement of the evidence containing his clients' version of the proceedings in the trial court and the substance of the testimony of the witnesses. On June 3, 1999, the Savages' lawyer filed objections to his adversary's statement of the evidence, asserting that it "does not present a fair, accurate or complete account of what transpired at the trial of this cause." Rather than submitting his own accurate statement of the evidence, the Savages' lawyer stated that portions of the statement of the evidence submitted on behalf of Mr. Hildenbrandt and Ms. Ledbetter were accurate but that other portions were inaccurate. He also provided the court with his version of the portions of the statement of the evidence submitted on behalf of Mr. Hildenbrandt and Ms. Ledbetter that he believed to be inaccurate.[12]

Because of the disagreement between the parties regarding the contents of the statement of the evidence, the trial court exercised it prerogative under Tenn. R. App. P. 24(e) to settle the parties' differences. Rather than resolving the disputes regarding the content of the statement of the evidence and then directing the appellant to file a corrected statement of the evidence, the trial court entered an order on June 28, 1999, concluding that the Savages' objections to the statement of the evidence prepared on behalf of Mr. Hildenbrandt and Ms. Ledbetter were well taken and approving the "Plaintiff's [sic] Objections to the Statement of Evidence" filed on behalf of the Savages.

Within hours after the entry of the June 28, 1999 order, Mr. Hildenbrandt and Ms. Ledbetter filed a motion to supplement the record on appeal with a copy of the statement of evidence prepared

---

[12]For example, the Savages' response to the portion of the statement of the evidence regarding Mr. Hildenbrandt's testimony was as follows: "The plaintiffs do not agree with the last sentence in the statement of this witness that there was proof in the record that Mr. Hildenbrandt was recovering from by-pass surgery. Otherwise, while not accepting the testimony as truthful, the plaintiffs have no objection with the statements as to this witness. The plaintiffs do accept as truthful the statement of this witness that he told Mr. Savage that if he moved a modular home onto the cleared lot that he, Don Hildenbrandt, would doze it down."

on their behalf and filed on May 20, 1999. They argued that the record on appeal would not contain a fair, accurate, and complete account of the proceedings in the trial court unless the undisputed portions of their statement of the evidence were included in the appellate record along with the Savages' objections to their statement of the evidence. The Savages opposed the motion but admitted that their objections filed with the trial court should be "supplemented" in several particulars.

The trial court never acted on Mr. Hildenbrandt's and Ms. Ledbetter's motion, at least as far as this record shows. Because the trial court's June 28, 1999 approval of the Savages' objections to the statement of the evidence necessarily approved the portions of the statement of the evidence that the Savages had not specifically objected to, we entered an order pursuant to Tenn. R. App. P. 24(e), (g) on August 9, 2001, directing the clerk and master to file a supplemental record containing a copy of the statement of the evidence filed on behalf of Mr. Hildenbrandt and Ms. Ledbetter on May 20, 1999. The clerk and master has complied with our order. Accordingly, the appellate record in this case consists of (1) the papers filed in the trial court, (2) the exhibits filed during the October 5, 1998 trial, (3) the statement of the evidence filed on behalf of Mr. Hildenbrandt and Ms. Ledbetter on May 20, 1999, except insofar as it differs from the substance of the objections filed on behalf of the Savages on June 3, 1999, (4) the objections to the statement of the evidence filed on behalf of the Savages on June 3, 1999, and (5) the verbatim transcript of the proceedings before the trial court on March 26, 1999.

Resolving the ambiguity regarding the contents of the appellate record does not address the adequacy of these records for purposes of review. When faced with a decision about whether to retain a court reporter or proceed to trial in a civil case without a court reporter, lawyers and their clients should keep in mind the fate that befalls appellants who fail to submit a complete and accurate record to the appellate courts. An appellant who elects not to file either a transcript or a statement of the evidence will be faced with the practically insurmountable presumption that the record contained sufficient evidence to support the trial court's decision. *Tallent v. Cates*, 45 S.W.3d 556, 562 (Tenn. Ct. App. 2000); *Manufacturers Consol. Servs., Inc. v. Rodell*, 42 S.W.3d 846, 865 (Tenn. Ct. App. 2000); *King v. King*, 986 S.W.2d 216, 220 (Tenn. Ct. App. 1998). An appellant who submits a record that is later deemed so inadequate that it hinders appellate review will be faced with the prospect of paying damages to the appellee under Tenn. Code Ann. § 27-1-122 (2000). *Brooks v. United Uniform Co.*, 682 S.W.2d 913, 915 (Tenn. 1984); *Roberts v. England*, No. M1999-02688-COA-R3-CV, 2001 WL 575560, at *5 (Tenn. Ct. App. May 30, 2001) (No Tenn. R. App. P. 11 application filed).

Given the nature of the issues in this case, all parties made an unfortunate choice not to have a court reporter present at the October 5, 1998 trial. Statements of the evidence are particularly unsuited to boundary line disputes in which the parties have introduced numerous plats, deeds, photographs, diagrams, and drawings to prove their case. Simply listing or identifying these exhibits without correlating them to the witnesses' testimony based on them further complicates the task of interpreting the significance of the evidence. *Roberts v. England*, 2001 WL 575560, at *3. Both the statement of the evidence and the objections to the statement of the evidence filed in this case have this flaw. While they list the exhibits and identify the witness through whom they were introduced, neither of them makes any effort to correlate the substance of the witnesses' testimony to the

exhibits. As will be seen in the remainder of this opinion, the contents of the statement of the evidence and the objections to the statement of the evidence will prove outcome-determinative with regard to several issues.

## III.
### MR. HILDENBRANDT'S AND MS. LEDBETTER'S POST-TRIAL MOTIONS

The scope of the issues that can be considered on appeal can be influenced by the timing and the substance of the objections made in the trial court. Since many of the objections that Mr. Hildenbrandt and Ms. Ledbetter are making to the conduct of the trial court are included in their post-trial motions, we must first take up the trial court's May 24, 1999 order dismissing their Tenn. R. Civ. P. 59 and 60 motions. This order marked the culmination of what can best be described as an unnecessarily complicated process for considering post-trial motions.

### A.
### THE TENN. R. CIV. P. 59 MOTIONS

The trial court dismissed Mr. Hildenbrandt's and Ms. Ledbetter's February 19, 1999 Tenn. R. Civ. P. 59.04 motion on the ground that it was "untimely filed." While the trial court's reasoning as reflected in the transcript of the March 26, 1999 hearing is not clear, we take it that the court's rationale proceeded as follows:

(1)     Tenn. R. Civ. P. 59 does not permit post-judgment motions to reconsider;

(2)     Mr. Hildenbrandt and Ms. Ledbetter filed a motion called a "motion to reconsider" on November 20, 1998;

(3)     The December 3, 1998 order granting the November 20, 1998 "motion to reconsider" was "plain error" because the Tennessee Rules of Civil Procedure do not permit trial courts to treat motions like the November 20, 1998 motion as a Tenn. R. Civ. P. 59.04 motion to alter or amend;[13]

(4)     Because the December 3, 1998 order was "plain error," it could not effectively suspend or hold the November 4, 1998 judgment in abeyance;

(5)     The effect of the January 22, 1999 order was to reinstate the November 4, 1998 judgment as if the December 3, 1998 order had never been entered;

(6)     Tenn. R. Civ. P. 59.02 requires that Rule 59 motions be filed within thirty days of the entry of the judgment;

---

[13]The trial court explained in its January 22, 1999 order that "it was error to grant the requested relief [the relief requested in Mr. Hildenbrandt's and Ms. Ledbetter's November 20, 1998 motion to reconsider] . . . in that these parties having filed a pleading not authorized by the Tennessee Rules of Civil Procedure, designated as a motion to reconsider, the Court . . . has no duty to create a claim . . .."

(7)  Therefore, Mr. Hildenbrandt's and Ms. Ledbetter's February 19, 1999 "motion to alter or amend or alternatively motion for new trial" was untimely because it was it was not filed within thirty days following the entry of the November 4, 1998 judgment.

The initial premise of the trial court's reasoning is flawed. Tenn. R. Civ. P. 59.01 does not contain a blanket prohibition against all motions to reconsider. Rather, it provides that motions to reconsider any of the motions permitted by Tenn. R. Civ. P. 59 are not authorized. Regrettably, some lawyers continue to call their Tenn. R. Civ. P. 59.04 motions "motions to reconsider" despite our repeated warnings of the confusion this practice causes. However, the courts must judge motions by their substance rather than their title. *Bemis Co. v. Hinds*, 585 S.W.2d 574, 576 (Tenn. 1979); *Starks v. Browning*, 20 S.W.3d 645, 652 (Tenn. Ct. App. 1999). Accordingly, the appellate courts have repeatedly held that initial post-judgment motions called "motions to reconsider" should be treated as Tenn. R. Civ. P. 59.04 motions if they request the sort of relief available through motions to alter or amend. *Harris v. Chern*, 33 S.W.3d 741, 743 (Tenn. 2000); *Tennessee Farmers Mut. Ins. Co. v. Farmer*, 970 S.W.2d at 455; *Willingham v. Gallatin Group., Inc.*, No. M1998-00990-COA-R3-CV, 2001 WL 134599, at *1, n.3 (Tenn. Ct. App. Feb. 16, 2001) (No Tenn. R. App. P. 11 application filed).

Based on these principles, the trial court was correct when it entered its December 3, 1998 order construing Mr. Hildenbrandt's and Ms. Ledbetter's November 20, 1998 "motion to reconsider" as a Tenn. R. Civ. P. 59.04 motion. Unfortunately, it committed error when it reversed its field two months later and decided that the Tennessee Rules of Civil Procedure did not permit it to consider the November 20, 1998 motion as a Tenn. R. Civ. P. 59.04 motion to alter or amend.

There is one additional issue regarding Mr. Hildenbrandt's and Ms. Ledbetter's February 19, 1999 motion that should be addressed. If the trial court should have considered their November 20, 1999 "motion to reconsider" as a Tenn. R. Civ. P. 59.04 motion, it might be argued that the trial court should have denied their February 19, 1999 motion because it was nothing more than a successive Tenn. R. Civ. P. 59 motion that is prohibited by Tenn. R. Civ. P. 59.01. This argument, however, is not well-taken. Tenn. R. Civ. P. 59.01 prevents the same party from filing successive Tenn. R. Civ. P. 59 motions; it does not prevent a party from filing a Tenn. R. Civ. P. 59.04 motion seeking to alter or amend a judgment that has been changed in response to another party's Tenn. R. Civ. P. 59 motion. *Brenneman v. Brenneman*, M2000-00890-COA-R3-CV, 2001 WL 543434, at *3 (Tenn. Ct. App. May 23, 2001) (No Tenn. R. App. P. 11 application filed). That is precisely what happened in this case.

The November 4, 1998 judgment did not award monetary damages to the Savages. On December 4, 1998, the Savages filed a Tenn. R. Civ. P. 59.04 motion requesting the trial court to alter the November 4, 1998 judgment and to award them a $6,110.50 judgment because of the lack of evidence that they had caused damage to Mr. Hildenbrandt or Ms. Ledbetter. The trial court's January 22, 1999 order, among other things, granted the Savages' motion and altered the November 4, 1998 judgment to award the Savages a $6,110.50 judgment against Mr. Hildenbrandt and Ms.

Ledbetter.[14]  The February 19, 1999 motion filed on behalf of Mr. Hildenbrandt and Ms. Ledbetter addressed the substance of the trial court's January 22, 1999 order, the procedure employed by the trial court that led to the entry of the January 22, 1999 order, and the other matters raised in their November 20, 1998 motion that the trial court had never addressed on their merits.  Accordingly, the February 19, 1999 motion was not subject to dismissal.

**B.**
**THE TENN. R. CIV. P. 60.02(1) MOTION**

We turn next to Mr. Hildenbrandt's and Ms. Ledbetter's Tenn. R. Civ. P. 60.02(1) motion that the trial court took up at the March 26, 1999 hearing.  The trial court denied this motion on the ground that the case was then within the jurisdiction of this court because Mr. Hildenbrandt and Ms. Ledbetter had already filed a notice of appeal.  We have determined that the trial court erred when it declined to consider this motion on the ground that it no longer had jurisdiction over the case.

The procedural posture of this case had become entirely ambiguous by January 22, 1999, by virtue of the trial court's abrupt change of mind regarding Mr. Hildenbrandt's and Ms. Ledbetter's right to post-judgment relief.  It became more complicated within the next two months due in large part to the disparate efforts of the lawyer for Mr. Hildenbrandt and Ms. Ledbetter to obtain some sort of the relief from the November 4, 1998 judgment and the January 22, 1999 order.  The first complication was the lawyer's decision to file not one but two notices of appeal – one on February 19, 1999, and another on March 16, 1999 – from the same orders.[15]  The second complication was the lawyer's request that this court stay the appeal pending the resolution of his February 19, 1999 Tenn. R. Civ. P. 59.04 motion.  The third complication was the lawyer's decision to file a Tenn. R. Civ. P. 60.02(1) motion for relief from the judgment.

When finally confronted with the Tenn. R. Civ. P. 60.02(1) motion, the trial court disposed of it by finding that it had no jurisdiction to consider the motion.  As best we can determine, the court reasoned that it no longer had jurisdiction over the case because either the February 19, 1999 or March 16, 1999 notice of appeal had the effect of transferring jurisdiction over the case to this court.[16]  Unfortunately, the trial court overlooked the principle that a premature notice of appeal – that is one filed before the entry of a final judgment – does not transfer jurisdiction over the case from the trial court to the court of appeals.  The transfer of jurisdiction does not take place until the following three events have occurred: (1) a final judgment has been entered, (2) a timely notice of appeal has been filed, and (3) the bond for costs required by Tenn. R. App. P. 6 or an affidavit of indigence has been filed. *First Am. Trust Co. v. Franklin-Murray Dev. Co.*, No. M1998-00984-COA-R3-CV, 2001 WL 459092, at *4 & nn.8-9 (Tenn. Ct. App. May 2, 2001).

---

[14]We have already noted that the trial court later recognized its error in awarding a monetary judgment against Ms. Ledbetter and entered an order on April 12, 1999, correcting its mistake.

[15]The lawyer also filed the appeal bond required by Tenn. R. App. P. 6 on March 16, 1999.

[16]It is not altogether clear how the trial court had jurisdiction to enter its April 12, 1999 order pursuant to Tenn. R. Civ. P. 60.01 if it did not have jurisdiction to consider Mr. Hildenbrandt's and Ms. Ledbetter's March 29, 1999 Tenn. R. Civ. P. 60.02(1) motion.  Fortunately, deciding this case does not require us to address this conundrum.

Tennessee's rules governing civil and appellate procedure promote the use of Tenn. R. Civ. P. 59 motions because they prevent needless appeals by providing trial courts with an opportunity to correct errors before a judgment becomes final. *Madu v. Madu*, No. M1999-02302-COA-R3-CV, 2000 WL 1586461, at *3 (Tenn. Ct. App. Oct. 25, 2000) (No Tenn. R. App. P. 11 application filed). Thus, while a trial court's jurisdiction over a case comes to an end thirty days after the entry of a final order of judgment, *Parks v. McGuire*, 197 Tenn. 32, 35, 270 S.W.2d 347, 348 (1954); *Newport Hous. Auth., Inc. v. Hartsell*, 533 S.W.2d 317, 320 (Tenn. Ct. App. 1975), a timely filed Tenn. R. Civ. P. 59 motion suspends the time for filing a notice of appeal. Tenn. R. App. P. 4(b). The purpose of suspending the time for perfecting an appeal is to permit the trial court to retain jurisdiction over the case for the purpose of hearing and disposing of all timely filed Tenn. R. Civ. P. 59 motions. *Green Meadow Park, Inc. v. American Heritage Life Ins. Co.*, 540 S.W.2d 267, 270 (Tenn. Ct. App. 1976)*; see also Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998). Orders that have not become final as a result of the filing of a timely Tenn. R. Civ. P. 59 motion are subject to review and change by the trial court. Tenn. R. App. P. 3(a); *Crews v. Crews*, 743 S.W.2d 182, 186 (Tenn. Ct. App. 1987).

As we understand the procedural posture of this case as of March 26, 1999, jurisdiction over the case had not passed from the trial court to the appellate court because the trial court had not yet finally decided all the claims between all the parties. Finality did not come until the entry of the trial court's May 24, 1999 order.

The trial court filed its judgment on November 4, 1998. Within thirty days following the entry of this judgment, both the Savages and Mr. Hildenbrandt and Ms. Ledbetter filed Tenn. R. Civ. P. 59 motions.[17] Thus, there were two timely Tenn. R. Civ. P. 59 motions pending when the trial court entered its January 22, 1999 order. The January 22, 1999 order finally resolved all the remaining claims between all the parties and was, therefore, a final order for the purpose of Tenn. R. App. P. 4(a).[18] However, within 30 days after the entry of the January 22, 1999 order, Mr. Hildenbrandt and Ms. Ledbetter filed a Tenn. R. Civ. P. 59.04 motion to, among other things, take issue with the trial court's decision in the January 22, 1999 order to award the Savages a $6,110.50 judgment against them. We have already determined that this motion was proper and timely. Therefore, it had the effect of again suspending the time for perfecting an appeal and continuing the trial court's jurisdiction over the case. It was precisely for this reason that this court denied the motion for a stay filed on behalf of Mr. Hildenbrandt and Ms. Ledbetter. *Savage v. Hildenbrandt*, No. 01A01-9903-CH-00166 (Tenn. Ct. App. Mar. 19, 1999). There was no reason for us to stay the appeal because the trial court still had jurisdiction over the case. The notices of appeal filed by Mr. Hildenbrandt and Ms. Ledbetter were, therefore, premature under Tenn. R. App. P. 4(d) because they were filed before the trial court had resolved all the claims between all the parties.

---

[17]We have already held that the November 20, 1998 "motion to reconsider" filed on behalf of Mr. Hildenbrandt and Ms. Ledbetter should be treated as a Tenn. R. Civ. P. 59.04 motion.

[18]For the purpose of this particular discussion, it does not matter that the portion of the January 22, 1999 order denying Mr. Hiledenbrandt's and Ms. Ledbetter's November 20, 1998 "motion to reconsider" was erroneous. That matter could have been taken up on appeal.

When Mr. Hildenbrandt and Ms. Ledbetter presented their Tenn. R. Civ. P. 60.02(1) motion to the trial court during the March 26, 1999 hearing, their timely and proper February 19, 1999 Tenn. R. Civ. P. 59.04 motion was also pending before the court. With the proceeding in this posture, they were not entitled to relief under Tenn. R. Civ. P. 60 because the trial court had not yet entered a final judgment. *Campbell v. Archer*, 555 S.W.2d 110, 112 (Tenn. 1977). However, the relief they were seeking based on alleged surprise and mistake could also have been the basis for relief under Tenn. R. Civ. P. 59.04. *Madu v. Madu*, 2000 WL 1586461, at *5 & n.6. Accordingly, rather than treating their motion as a Tenn. R. Civ. P. 60.02(1) motion, the trial court should have considered its substance and treated it as simply an amendment to their already pending Tenn. R. Civ. P. 59.04 motion.

In summary, the trial court erred by denying Mr. Hildenbrandt's and Ms. Ledbetter's Tenn. R. Civ. P. 60.02(1) motion for three reasons. First, the trial court still had jurisdiction over the case because it had not yet fully and finally adjudicated all the claims between all the parties. Second, the trial court had a timely, proper Tenn. R. Civ. P. 59.04 motion pending before it when the Tenn. R. Civ. P. 60.02(1) motion was filed. Third, the trial court should have given effect to the substance of the Tenn. R. Civ. P. 60.02(1) motion and should have treated it as an amendment to the already pending Tenn. R. Civ. P. 59.04 motion. Accordingly, Mr. Hildenbrandt's and Ms. Ledbetter's Tenn. R. Civ. P. 60.02(1) motion was not subject to dismissal for lack of jurisdiction.

## C.

Our decision that the trial court erred by denying the post-judgment motions filed by Mr. Hildenbrandt and Ms. Ledbetter raises one final question regarding the scope of review and the available remedies. Must we remand the case with directions to consider the issues raised in the post-trial motions, or may we consider the substance of these issues ourselves? The answer depends on the nature of the proceedings in the trial court.

Had the proceedings below been a jury trial, our reversal of a trial court's denial of a motion for new trial on the ground that it was untimely would have triggered a remand with directions to the trial court to consider the grounds raised in the motion. *Standard Oil Co. v. Naramore*, 30 Tenn. App. 430, 448, 207 S.W.2d 7, 15 (1947). The remand would have been required because the filing and consideration of a motion for new trial are necessary prerequisites to an appeal from a jury trial in a civil case. The same rule does not apply with regard to non-jury trials because a Tenn. R. Civ. P. 59 motion is not a prerequisite to an appeal. *Mahaffey v. Mahaffey*, No. 01A01-9306-PB-00251, 1993 WL 496833, at *4 (Tenn. Ct. App. Dec. 3, 1993) (No Tenn. R. App. P. 11 application filed); *Green Meadow Park, Inc. v. American Heritage Life Ins. Co.*, 540 S.W.2d at 270. The denial of a Tenn. R. Civ. P. 59.04 motion in a non-jury case brings up the underlying judgment for review. *See Ragsdale v. Hill*, 37 Tenn. App. 671, 680-81, 269 S.W.2d 911, 916 (1954). Accordingly, we will proceed to the issues raised by Mr. Hildenbrandt and Ms. Ledbetter and, in accordance with Tenn. R. App. P. 36(a), we will grant the parties the relief on the law and the facts to which they are entitled.

# IV.
## THE LATE NIGHT COURT SESSION

Mr. Hildenbrandt and Ms. Ledbetter insist that they were denied a fair trial because the trial court insisted on holding court until approximately 12:20 A.M. despite their lawyer's protestations that she was too tired to represent her clients effectively and that the lateness of the hour was adversely affecting their elderly and physically infirm witnesses. This assertion raises a telling point that would require relief if it was supported by the record. However, the record does not substantiate the claims either that the trial court continued to hold court over objection of counsel or that the trial court declined to grant a continuance because of the lateness of the hour.

## A.

Trial courts have broad discretion over the course and conduct of trials. *State v. King*, 40 S.W.3d 442, 449 (Tenn. 2001); *Justice v. Sovran Bank*, 918 S.W.2d 428, 429-30 (Tenn. Ct. App. 1995); *Marress v. Carolina Direct Furniture, Inc.*, 785 S.W.2d 121, 129 (Tenn. Ct. App. 1989). This discretion extends to determining when court will convene and when it will adjourn. Accordingly, trial courts have discretion to determine how late into the evening a trial should continue. *State v. Poe*, 755 S.W.2d 41, 47 (Tenn. 1988).

A trial court's exercise of its discretion over the times for opening and closing court should be influenced by a realistic understanding of the adversary system. A trial is an arduous affair that demands the closest attention and most alert responses a lawyer can muster. It is a drain on both the nervous energy and physical stamina of the lawyers, and it is no less trying on the parties, the witnesses, the jurors, the judge, and the other court personnel. *Commonwealth v. Martin*, 348 A.2d 391, 407-08 (Pa. 1975). Accordingly, late night trial sessions, while not per se improper, *Hembree v. State*, 546 S.W.2d 235, 243 (Tenn. Crim. App. 1976), should only be held when required by unusual circumstances. *State v. Parton*, 817 S.W.2d 28, 33-34 (Tenn. Crim. App. 1991).

Tennessee's appellate courts have declined to find error in a trial court's decision to hold court past 9:00 P.M. in the absence of proof that the parties had been prejudiced. *State v. Simon*, 635 S.W.2d 498, 505 (Tenn. 1982). Similarly, the Tennessee Court of Criminal Appeals has declined to find error in holding court until 9:13 P.M. when the court adjourned court as soon as the defendant's lawyer pointed out the lateness of the hour, *Seelbach v. State*, 572 S.W.2d 267, 271 (Tenn. Crim. App. 1978) or in holding court until 10:05 P.M. to avoid sequestering the jury on Sunday. *Holt v. State*, 591 S.W.2d 785, 791-92 (Tenn. Crim. App. 1979). However, the Court of Criminal Appeals has concluded that the trial court erred by declining to adjourn court at midnight when the defendant's lawyers stated that they could no longer represent the defendant effectively. *Hembree v. State*, 546 S.W.2d at 242.

## B.

The appellate record in this case does not support Mr. Hildenbrandt's and Ms. Ledbetter's assertions that the trial court insisted on holding court to the late evening hours despite the protestations of their lawyer. For the purpose of addressing this issue, our consideration must be

limited to the facts properly before this court contained in the agreed-upon portions of the statement of the evidence as approved by the trial court.[19]

The parties' versions of what transpired during the October 5, 1998 trial differ in several material respects. As best we can determine from the competent portions of the statements of the evidence, the trial commenced at 1:00 P.M., even though it had been scheduled to begin at 9:00 A.M. At the outset, the lawyers informed the trial court that they wanted to conclude the trial that day. When the Savages concluded their case at approximately 5:00 P.M., the trial court asked the lawyers if they desired to take a break to make telephone calls and then resume the trial. Both lawyers agreed to this suggestion, and so the lawyer representing Mr. Hildenbrandt and Ms. Ledbetter did not begin calling her witnesses until approximately 5:30 P.M. and did not conclude presenting her witnesses until approximately 11:30 P.M. The parties then presented closing arguments, the trial court ruled from the bench, and the proceeding adjourned at approximately 12:20 A.M. on October 6, 1998.

Despite the assertions to the contrary in the statement of the evidence submitted by Mr. Hildenbrandt and Ms. Ledbetter,[20] the approved statement of the evidence states affirmatively that all the parties had agreed to continue the trial after 5:00 P.M. and that "not once did anyone move or voice a concern regarding the hour of the day or the status of their witnesses." The approved statement of the evidence also states that at 11:50 P.M., after closing arguments, the lawyer representing Mr. Hildenbrandt and Ms. Ledbetter "stated to the Court that she would not oppose His Honor taking the case under advisement. She indicated at that point that she was tired and felt like opposing counsel was, as well." The trial court responded to this statement by asserting that he was prepared to "make findings and conclusions and render his judgment."

In addition to the account of the trial in the approved statement of the evidence, the trial court discussed its recollection of the proceeding during the March 26, 1999 hearing. According to the trial court, the lawyer representing Mr. Hildenbrandt and Ms. Ledbetter made a "comment about the lateness of the hour . . . [some time] in the evening." After the lawyer's comments, the trial court stated that it

> tried to make sure every time a witness got on the witness stand, to make sure that the witness was okay. So I asked the witness questions: Are you okay? Can you testify? Words to that effect to try to determine if a witness could testify without any problem.

The trial court then added:

---

[19]Mr. Hildenbrandt and Ms. Ledbetter place great weight on the account of the trial contained in the affidavit of the lawyer who represented them at trial that accompanied their February 19, 1999 Tenn. R. Civ. P. 59.04 motion. We cannot consider the factual assertions in this affidavit because affidavits cannot be used to vary or contradict the record itself. *Parrish v. Yeiser*, 41 Tenn. App. 690, 694, 298 S.W.2d 556, 558 (1955).

[20]This statement of the evidence, which was rejected by the trial court, stated that "Ms. Dye asked several times during the nighttime hours for a continuance since she had elderly witnesses and she was too tired to represent her clients properly. These requests were denied by the trial court."

-15-

> With respect to other people who may have had problems, they were never identified in any motions or any affidavits. . . .
>
> *        *        *
>
> Now, the Court did not intend to preclude Ms. Dye from asking the Court or moving the Court or motioning the court for a continuance. Ms. Dye never made a motion, an oral motion: I move the Court to stop this hearing and to continue it. She voiced some concerns and there was discussion about it. And in light of her concerns, the Court was also attempting to be sensitive.[21]

Despite the lawyer's apparent agreement to hold court after 5:00 P.M., this record does not disclose the existence of the sort of unusual circumstances that might conceivably have justified the trial court's decision to hear proof until 11:30 P.M. There was no sequestered jury, and there is no indication that continuing the trial on Tuesday, October 6, 1998 would have disrupted the trial court's docket or conflicted with the lawyer's other commitments. In light of the age of several of the witnesses and the fact that many of them had been at the courthouse since 9:00 A.M., the trial court either should have allowed a more lengthy recess for dinner or should have continued the case when the lawyer representing Mr. Hildenbrandt and Ms. Ledbetter expressed concern about the lateness of the hour.

The trial court's error of continuing to hear evidence until 11:30 P.M. does not necessarily mean that Mr. Hildenbrandt and Ms. Ledbetter were deprived of a fair hearing or that they should be given the opportunity to have another hearing to enable them to call again the same witnesses they called during the October 5, 1998 hearing. To be entitled to a new hearing, Mr. Hildenbrandt and Ms. Ledbetter must demonstrate that they were somehow prejudiced by the trial court's decision to hold court until 12:20 A.M. *State v. Simon*, 635 S.W.2d at 505 (declining to provide relief to a party who could not demonstrate prejudice from a trial court's decision to hold court past 9:00 P.M.). This they have not done.

There is no evidence in the record indicating that Mr. Hildenbrandt and Ms. Ledbetter were prevented from calling all the witnesses they planned to call at this trial. There is likewise no evidence that their direct or re-direct examination of any of their witnesses was truncated because of the lateness of the hour. While they have complained that their witnesses were not as forceful as they might otherwise have been, they have not demonstrated or described what else their witnesses would have testified to had they been fresher or more alert. Accordingly, in light of the trial court's

---

[21]The trial court's account of the October 5, 1998 trial differs from the statement of the evidence the trial court later approved. While the statement of the evidence indicates that Ms. Dye did not comment about the lateness of the hour until after closing argument, the trial court's account indicates that Ms. Dye's comments were made while she was still calling witnesses. This difference cannot be reconciled. Likewise, we cannot determine from the record when during the evening Ms. Dye voiced her concern about the lateness of the hour. Based on the trial court's comments about his concern for Niston Gladden's ability to testify, Ms. Dye's comments must have been made relatively early in the evening because Mr. Gladden was the second witness after court resumed at 5:30 P.M.

representation that he carefully determined that each witness called after 5:30 P.M. was competent to testify, Mr. Hildenbrandt and Ms. Ledbetter have not carried their burden of demonstrating that they were adversely affected by the trial court's decision to hear proof until 11:30 P.M. Based on the record before us, we cannot conclude that the trial court's decision to hear proof until 11:30 P.M., although ill-advised, more probably than not affected the outcome of this case. Tenn. R. App. P. 36(b).

There is one other reason for declining to grant Mr. Hildenbrandt and Ms. Ledbetter an opportunity to present their witnesses a second time. Based on the approved record, the lawyer who represented them at trial agreed to begin putting on her case at 5:30 P.M. and, despite the lateness of the hour, never objected to proceeding with the trial and never requested a continuance. Parties are not entitled to relief on appeal from errors for which they are at least partially responsible or for which they failed to take reasonably available remedial action. Tenn. R. App. P. 36(a). In addition to her failure to object to the lateness of the hour and her failure to request a continuance, the lawyer representing Mr. Hildenbrandt and Ms. Ledbetter failed to request permission to call her elderly or infirm witnesses out of order to avoid the hardship of requiring them to wait over eight hours to testify. In light of their lawyer's strategic decisions during the October 5, 1998 trial, we decline to conclude that the trial court's decision to hear evidence until 11:30 P.M. warrants granting Mr. Hildenbrandt and Ms. Ledbetter another opportunity to put on their case.

## V.
### THE DENIAL OF THE TENN. R. CIV. P. 59 MOTION WITHOUT A HEARING

Mr. Hildenbrandt and Ms. Ledbetter also take issue with the trial court's January 22, 1999 order denying their Tenn. R. Civ. P. 59.04 motion without a hearing. They claim that they were denied a fair hearing because the trial court changed its mind between December 3, 1998 and January 22, 1999 about granting them a "limited new trial" and because the trial court altered the November 4, 1998 judgment "without further proof or supporting affidavits" and without affording them an opportunity to oppose the Savages' motion to alter or amend.

This particular portion of the post-trial procedure is somewhat puzzling. It is not altogether clear why the trial court insisted on proceeding with the two pending post-trial motions on January 14, 1999, after the lawyer representing the Savages announced that Mr. Hildenbrandt and Ms. Ledbetter had retained a new lawyer and that he had agreed with the new lawyer's request for a thirty-day continuance of the hearing. It is likewise difficult to understand the reason for proceeding with the January 14, 1999 hearing in the absence of the lawyer representing Mr. Hildenbrandt and Ms. Ledbetter because one of the purposes of the January 14, 1999 hearing was to permit Mr. Hildenbrandt and Ms. Ledbetter to recall several of their witnesses.

Parties are not necessarily entitled to present oral argument regarding their Tenn. R. Civ. P. 59 motions. *Custom Built Homes v. G.S. Hinsen Co.*, No. 01A01-9511-CV-00513, 1998 WL 960287, at *5 (Tenn. Ct. App. Feb. 6, 1998) (No Tenn. R. App. P. 11 application filed). They are, however, entitled to a fair opportunity to respond to their adversaries' Tenn. R. Civ. P. 59 motions. Because of the trial court's earlier decision to hold an evidentiary hearing on January 14, 1999, the lawyer representing Mr. Hildenbrandt and Ms. Ledbetter could appropriately have assumed that the

hearing would provide the opportunity to respond to the Savages' Tenn. R. Civ. P. 59.04 motion. The lawyer also had good reason to assume that the January 14, 1999 hearing would be continued after he and the Savages' lawyer agreed to a thirty-day continuance. Accordingly, the trial court's change of mind regarding the evidentiary hearing and its decision to proceed with the January 14, 1999 hearing in the absence of the lawyer for Mr. Hildenbrandt and Ms. Ledbetter effectively prevented Mr. Hildenbrandt and Ms. Ledbetter from opposing the Savages' Tenn. R. Civ. P. 59.04 motion.

The trial court erred by insisting on proceeding with the January 14, 1999 hearing without the lawyer representing Mr. Hildenbrandt and Ms. Ledbetter. Its decision, however, is not reversible error. It did not affect the trial court's judgment, and it did not undermine our ability to review the substance of the trial court's decisions regarding the location of the Savages' southern boundary line and the Savages' damages. Both of these decisions rest on the evidence presented at the October 5, 1998 hearing. Because we have already concluded that Mr. Hildenbrandt and Ms. Ledbetter were not entitled to recall the witnesses they had presented at the October 5, 1998 hearing, we can review the trial court's decisions regarding the boundary line and the damages using the statement of the evidence presented at the October 5, 1998 hearing.

## VI.
### THE DISPUTED BOUNDARY LINE

Mr. Hildenbrandt takes issue with the trial court's decision to award the Savages approximately .28 acres of property south of the Ridge Road.[22] He asserts that the trial court erred by basing its decision on the calls in the admittedly defective deeds rather than on the testimony of virtually all the witnesses, who testified that the Ridge Road was the boundary between the Savages' property and Mr. Hildenbrandt's property. We agree.

When the Savages first filed this lawsuit, they alleged that a 1992 survey showed that the disputed boundary "runs along the ridge road which lies to the west [sic][23] of the plaintiffs [sic] tract." They never claimed to own any property south of the Ridge Road, and they only claimed an easement over the Ridge Road itself for ingress and egress. At the October 5, 1998 trial, virtually every witness who testified regarding the location of this boundary line, including Mr. Savage, testified that since 1933 everyone understood that the boundary line ran along the Ridge Road. In fact, Mr. Savage said if the trial court "gave the ridge road to me, I would . . . give it back."

Viewing the boundary line evidence in its entirety, we have concluded that the trial court erred by relying exclusively on Mr. White's survey to determine the location of the boundary between the Savages and Mr. Hildenbrandt. In cases of this sort, the trial court should look first to the natural objects or landmarks on the property, then to the artificial objects or landmarks on the property, then to the boundary lines of adjacent property, and finally to the calls in the deeds. *Mix v. Miller*, 27 S.W.3d 508, 513 (Tenn. Ct. App. 1999); *Franks v. Burks*, 688 S.W.2d 435, 438 (Tenn.

---

[22]Ms. Ledbetter never claimed an interest in this property.

[23]The Ridge Road runs to the south or southwest of the Savages' tract.

Ct. App. 1984); *Thornburg v. Chase*, 606 S.W.2d 672, 675 (Tenn. Ct. App. 1980). In light of the admittedly defective calls in the parties' deeds and the unanimous agreement that the boundary line ran along the Ridge Road, the evidence preponderates against the portion of the trial court's judgment that awards the Savages the .28-acre tract south of the Ridge Road. Accordingly, on remand, the trial court shall modify the portion of its order regarding this boundary line to reflect that the boundary line between the Savages and Mr. Hildenbrandt is the northern edge of the Ridge Road.

## VII.
### THE SET-OFF TO THE SAVAGES' DAMAGES

As a final matter, Mr. Hildenbrandt takes issue with the trial court's decision to award the Savages a $6,110.50 judgment against him. While he does not dispute the trial court's conclusion that his obstruction of the Ridge Road damaged the Savages, he asserts that the trial court erred by changing its mind about granting him a set-off based on the damage to his property caused by the Savages' clearing of brush and trees along the Ridge Road. We have determined that the evidence, as portrayed in this record, does not preponderate against the trial court's conclusion that the brush and trees cleared by the Savages were not on Mr. Hildenbrandt's property.

Mr. Hildenbrandt would only be entitled to a set-off if he proved either that the Savages cleared trees that belonged to him or that the manner in which the Savages cleared their property somehow damaged his property. Mr. Hildenbrandt presented no evidence regarding the latter; therefore, his only theory of damages was that the Savages cut down trees that belonged to him. Mr. Hildenbrandt testified that trees had been planted along the Ridge Road to prevent erosion on his property and that he had the property surveyed several years before the present dispute and had marked the trees along the boundary line with blue paint. However, the record does not reflect whether these trees were to the south or north of the Ridge Road. In response, Mr. Savage and his bulldozer operator testified that no clearing work was performed across the Ridge Road and that the trees with the blue paint that were cleared were to the north of the Ridge Road.

The trial court had the opportunity to observe the testimony of the witnesses and to weigh their credibility, and its findings of fact based on these credibility determinations are entitled to great weight on appeal. *Randolph v. Randolph*, 937 S.W.2d 185, 189 (Tenn. 1996); *Hobbs v. Hobbs*, 987 S.W.2d 844, 847 (Tenn. Ct. App. 1998). The trial court determined that Mr. Hildenbrandt was not entitled to a set-off because he had failed to prove that any of the trees cleared by the Savages belonged to him. Thus, the trial court must necessarily have accredited the testimony of Mr. Savage and his bulldozer operation regarding the location of the cleared trees over Mr. Hildenbrandt's testimony. This record provides us no basis for overturning this conclusion.

## VIII.

In summary, we have concluded that the errors committed by the trial court regarding the lateness of the October 5, 1998 hearing and its errors in consideration and disposition of the post-trial motions did not affect the substantive outcome of this case. We have also determined that the evidence preponderates against the trial court's decision to award the Savages the .28-acre tract south

of the Ridge Road and that the evidence supports the trial court's decision to award the Savages a $6,110.50 judgment against Mr. Hildenbrandt without a set-off.

We affirm the judgment as modified herein and remand the case to the trial court for further proceedings consistent with this opinion. The costs are taxed in equal proportions to Don Hildenbrandt and his surety and to Jimmy Joe Savage and Frances Joy Savage for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE